Laryssa ELDER, Individually, and as Administratrix of the Goods, Chattels and Credits of Alfred Elder, Deceased, Appellant,

v.

METROPOLITAN FREIGHT CARRIERS, INC., et al., Appellees.

No. 75–2424.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) June 24, 1976.

Decided Sept. 16, 1976.

Lawrence M. Kenney, Schechter, Schechter & Wishod, Smithtown, N. Y., for appellant.

Stevens & Mathias, Newark, N. J., for appellees.

Before ADAMS, HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

This appeal challenges a district court's authority to enforce its rule regulating con-

tingent fees in tort actions. We hold that its premature order of dismissal in a wrongful death action did not deprive the court of power to enforce compliance with its fee schedule. Nor was it required to accede to a fee higher than allowed by the rule but approved by a state court which had no jurisdiction over the negligence case. Accordingly, we affirm.

On October 3, 1972 a truck owned by defendant Metropolitan Freight Carriers, Inc. crossed the center line of a highway in New Jersey and collided head-on with the station wagon in which Alfred Elder was a passenger. Elder was killed in the collision, leaving as survivors a widow and three minor children.

The Surrogate's Court for Suffolk County, New York, where Elder had been domiciled and where his family continued to reside, issued restricted letters of administration to the widow. Mrs. Elder was authorized to institute a wrongful death action but not to settle the case without the Surrogate's approval. She retained the Smithtown, New York law firm of Schechter, Schechter & Wilshod, the appellant in fact, to prosecute the wrongful death action on a one-third contingent fee basis. That firm engaged Robert C. Minion of Garden City, New York, as trial counsel.

Mr. Minion determined that the suit should be brought in the United States District Court for New Jersey. Under the rules of that court, Kenneth Grossman, a member of the New Jersey bar, was retained to act as "docket" counsel. Later, Robert McKeever was substituted for Mr. Grossman.

After some routine discovery, the case was called for pretrial conference before a United States Magistrate in January, 1975. Through his efforts, the parties agreed upon a settlement of $300,000.00. At the conference they discussed the necessity of approval by the Surrogate's Court and the magistrate suggested that the defendant's insurance carrier might prefer an order of the district court to pay the money.[1] Defense counsel sent a letter to Mr. Minion, confirming the settlement and concluding:

"I shall await word from you with respect to proceedings before the Surrogate of Suffolk County where I believe plaintiff is domiciled. I believe that his findings will at least have to be incorporated in the Order of Dismissal if a separate hearing is not required. I am checking on this and will advise you."

On March 18, 1975 the district judge signed an order which read:

"It appearing that it has been reported to the court that the above-entitled action has been settled;

"It is, on this 18th day of March, 1975 "ORDERED that this action is hereby dismissed, without costs and without prejudice to the right, upon good cause shown within 60 days, to reopen the action if the settlement is not consummated."

On April 3, 1975 defense counsel wrote to the magistrate stating:

"Because of the nature of the action, a suit for wrongful death, and the existence of children, who suffered a pecuniary loss, the matter presently awaits a determination of the Surrogate of Suffolk County, New York, where the decedent's family resides, the manner of distribution. It was my understanding that when an Order is issued by the Surrogate, it would be reviewed and incorporated in an Order of the United States District Court directing payment and entering a dismissal.

"Since the matter was conferenced with you on several occasions and you are most familiar with it, I am writing to you with a copy to Judge Stern asking that the Court maintain an open file on it until the Order of the Surrogate's Court is

---

1. At a hearing before the district court on July 28, 1975, Mr. Minion, plaintiff's trial counsel, stated:

"It was on that basis, then, that we got into the business of submitting it to the Surrogate. Then, in turn, resubmitting a proposed order to this Court for, in effect, its approval of a Surrogate Court order."

issued and may then be reviewed by this Court and incorporated in a final Order."

On May 12, 1975, Mr. McKeever, plaintiff's New Jersey counsel, wrote to the district judge reporting the proceedings before the Surrogate and stated:

"On March 18, 1975, the [district] Court entered an order, upon settlement, dismissing the captioned case without prejudice to the right, upon good cause shown within 60 days, to reopen the action if settlement is not consummated. Since the 60-day period will expire on May 17, next, as a precaution, this is to request that the Court extend the aforesaid time period sufficiently to allow for completion of the proceedings before the New York Surrogate. May I suggest another 30 days which should be ample time for the consummation of *all matters regarding the settlement.*" (emphasis supplied)

On May 14, 1975 the district judge signed an order extending the period for reopening for an additional thirty days.

Two weeks later plaintiff's counsel sent to the defendants' lawyers copies of the Surrogate's order providing for distribution among the widow and children and setting counsel fees substantially in excess of the amount allowable under the New Jersey Rule.[2] For some reason not disclosed by the record, defense counsel did not present the Surrogate's order to the district judge until the first week of July. The court scheduled a conference of counsel for July 28, 1975 and, at that time, questioned the authority of the Surrogate to fix counsel fees for a matter pending in New Jersey.

At one point counsel for the plaintiff suggested that, since the time set in the order of March 18, 1975 had expired, the case stood dismissed and the court had no jurisdiction to question the fee. Subsequently, however, the same lawyer said:

"Now it is before your Honor on the merits. I would respectfully suggest that it is New York law that controls." The court asked for the defendant's position, and counsel replied:

"I ask this Court to resolve the question of the payment of the amounts of money and their allocation."

The Court:

"I cannot technically do it. I will tell you why. The matter has been dismissed here. I cannot, I think, sua sponte, reopen. If the defendant wants to move to reopen that may be something else."

Later the judge stated:

"I may be wrong. I think—if the matter is dismissed, it is dismissed. I am not asserting more jurisdiction than I have. It may be immaterial to you whether I sign the order or not. If so, you are free to walk out of here so far as this litigation is concerned. No farther than that, for I have other thoughts. I'll tell you right now: If you want to brief the question, fine. I'll make a decision on it. That decision will bind you, however, for you will have at that point submitted to the jurisdiction of this court whether this matter—whatever the status of this matter is which is utterly unclear. . . ."

Plaintiff's counsel agreed, later filed a brief, and argued the matter. Before that hearing adjourned, however, the court asked the defense attorney to comment. He responded that he had no position with respect to how the funds should be distributed. The court then suggested that, being a member of the New Jersey bar, defense counsel might be guilty of improper conduct if he paid money to settle a case in a manner which would violate the court's rules.

---

2. The fee fixed by the Surrogate was approximately $55,000.00 in excess of that allowable under the New Jersey Rule which had been adopted by the district court. New York permits a contingent fee of one-third, but New Jersey Court Rule R. 1:21–7, with certain exceptions, uses the following schedule:

(1) 50% on the first $1000 recovered;

(2) 40% on the next $2000 recovered;

(3) 33⅓% on the next $47,000 recovered;

(4) 20% on the next $50,000 recovered;

(5) 10% on any amount recovered over $100,000.

Higher fees are allowable only upon order of court.

At a hearing on October 8, 1975, plaintiff's lawyers contested the jurisdiction of the court as well as the question of conflict of laws. By agreement of the parties at the conclusion of the hearing, the funds not under dispute were to be distributed to the parties and the lawyers, leaving for disposition only the question of the disputed counsel fees.

This appeal is before the court ex parte on the briefs filed by plaintiff's counsel. The defendant has disclaimed any interest in the amount of fees to be awarded the lawyers,[3] and Mrs. Elder has declined to file a brief despite proper notification by plaintiff's lawyers of the conflict of interest.[4]

Appellant contends that the submission of a proposed order to the district court by defense counsel was gratuitous and unnecessary. However, it is clear the parties contemplated that the settlement would be consummated only after approval by both the Surrogate and the district court. The correspondence between counsel and the statement of Mr. Minion to the court on July 28, 1975 permit no other finding.

■ The problem of whether jurisdiction continued to exist over the case after the ninety days fixed in the dismissal order was created in part by the court's own errors.[5] The form order of March 18, 1975, which ostensibly terminated the matter on the court's docket, did not express the intent of the parties. Their understanding was that the district court would enter an order specifying how the settlement funds were to be distributed. The letter sent by defense counsel on May 3, 1975 to the magistrate, with a copy to the district judge, requested that the file be kept open for that purpose and should have alerted the court to the errors in its dismissal order.

When the court extended the time for reopening an additional thirty days, it is understandable that counsel, expecting the procedures to be completed before that expiration date, felt no need to press for a correction of the dismissal order. Apparently because of a busy trial schedule of counsel on both sides or a failure of communication between them as to which of the lawyers would perform the task, no extension of the June 18 deadline was requested.

■ At the hearing on July 28, 1975, defense counsel specifically requested a ruling from the court on allocation. At that point the court had the power to consider the request as a motion under Fed.R.Civ.P. 60(b) to open the dismissal because of inadvertence of counsel. Also open to the judge was the option of entering an order sua sponte under Rule 60(a) because of error in the court record.[6]

The availability of relief under Rule 60 defeats the appellant's contention that the case "died" upon the expiration date fixed by the March 18 order and its amendment

---

3. Metropolitan Freight Carriers has taken the position that since the settlement proceeds were paid into the registry of the district court, the defendant has no interest in this appeal. The district court also reduced the payment which the Surrogate had directed to be made to Liberty Mutual Insurance Company, the workmen's compensation subrogee, from $11,150 to $7,233.33. No question has been raised about that action.

4. The record reflects that plaintiff's counsel kept Mrs. Elder fully informed as the fee litigation progressed and gave her copies of the briefs which were filed. She was present in the district court during the hearing in October, 1975.

5. The concern about the district court's jurisdiction in this matter suggests the advisability of reconsidering the practice of dismissing the

case before the parties have actually completed settlement procedures.

6. Fed.R.Civ.P. 60 provides in pertinent part:
"(a) *Clerical Mistakes.* Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

. . . . .

"(b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . . ."

and could not thereafter be "revived." Thus, such cases as *A. B. Dick Co. v. Marr*, 197 F.2d 498 (2d Cir.), *cert. denied*, 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680 (1952); *United States v. Deaton*, 207 F.2d 726 (5th Cir. 1953); *Humphreys v. United States*, 272 F.2d 411 (9th Cir. 1959), and *Bomer v. Ribicoff*, 304 F.2d 427 (6th Cir. 1962), are not in point. *Accord*, 5 J. Moore, Federal Practice ¶ 41.05[2] (1976). The court had the power to reopen the case under Rule 60 and, thus, it did not lack the ability to enter an order of distribution.

■ The district court, however, chose to base jurisdiction upon its authority to regulate the professional conduct of members of its bar. This action was not erroneous. Defense counsel was a practicing member of the district court's bar, as was Mr. McKeever, one of plaintiff's counsel. Mr. Minion had been admitted *pro haec vice* and, accordingly, was subject to the local rules during the course of his practice before the district court.[7] A court has authority to issue appropriate orders to members of its bar in enforcement of its rules. Here, where the court had been asked for an order of distribution, it had the power to direct that the defense lawyers distribute to plaintiff's counsel only the fee permitted by the local rule.[8]

In *Schlesinger v. Teitelbaum*, 475 F.2d 137 (3d Cir.), *cert. denied*, 414 U.S. 1111, 94 S.Ct. 840, 38 L.Ed.2d 738 (1973), we reviewed the applicable law and concluded that a district court has the authority to regulate contingent fees on sums recovered through the use of its process. That case controls here. *See also American Trial Lawyers Ass'n v. New Jersey Supreme Court*, 66 N.J. 258, 330 A.2d 350 (1974); *Gair v. Peck*, 6 N.Y.2d 97, 188 N.Y.S.2d 491, 160 N.E.2d 43 (1959), *cert. denied*, 361 U.S. 374, 80 S.Ct. 401, 4 L.Ed.2d 380 (1960).

Appellant does not dispute the proposition that a court may limit contingent fees but argues that, under conflicts of law principles and the Full Faith and Credit Clause of the United States Constitution, the district court should have acquiesced in the fee set by the Surrogate. We find no merit to either contention.

■ The district court recognized that resolution of conflict of law questions is governed by the general principles set out in *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Court there held *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires that, in a diversity case, a federal district court apply the conflict of law rulings of the state in which it sat. The Supreme Court also met the argument invoking the Full Faith and Credit Clause of the Constitution.[9] The underlying dispute in the case was whether the district court in Delaware was bound by the New York Civil Practice Act to add interest to a judgment for breach of contract when it was conceded that New York law applied to the substantive aspects of the case. In concluding that the law of the forum governed, the Court stated:

> "Here, however, section 480 of the New York Civil Practice Act is in no way

---

**7.** In his application for admission *pro haec vice*, Mr. Minion stated that he had "familiarized himself with the Sections of Law and Procedural Law and Rules of this forum and represents here that he will consult with Mr. Grossman, on any point should that be necessary."

**8.** *Bounougias v. Peters*, 369 F.2d 247 (7th Cir. 1966), *cert. denied*, 386 U.S. 983, 87 S.Ct. 1288, 18 L.Ed.2d 232 (1967), is distinguishable in a number of important points, including the fact that the judgment had been satisfied some years before the court's ancillary jurisdiction was invoked. In *Garrett v. McRee*, 201 F.2d 250, 253 (10th Cir. 1953), where the fee had been fixed before the judgment was satisfied, Judge Murrah wrote: "[W]here an attorney recovers a fund in a suit under a contract with a client providing that he shall be compensated only out of the fund he creates, the court having jurisdiction of the suit has power to fix the attorney's compensation and direct its payment out of the fund."

**9.** Article IV, Section 1 received statutory implementation in the Judiciary Act of 1790 and is codified at 28 U.S.C. § 1738.

related to the validity of the contract in suit, but merely to an incidental item of damages, interest, with respect to which courts at the forum have commonly been free to apply their own or some other law as they see fit." 313 U.S. at 498, 61 S.Ct. at 1022.

Similarly, the amount of a contingent fee is not related to the measure of damages in a tort case.

■ Rules regulating contingent fees pertain to conduct of members of the bar, not to substantive law which determines the existence or parameters of a cause of action. Such rules are designed to promote the efficient disposition of litigation and enhance the public's confidence in the bar. We have reaffirmed the "unquestioned principle" that all federal courts have "the power both to prescribe requirements for admission to practice before [them] and to discipline attorneys who have been admitted to practice before [them]." *In re Abrams*, 521 F.2d 1094, 1099 (3d Cir.), *cert. denied*, 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975). It follows that such rules are of deep concern to the court which promulgated them, far more so than the practice under scrutiny in *Klaxon*. When local rules of a federal district court are questioned, it is doubtful that the choice of law doctrines of the forum state come into play. However, conceding *arguendo* that the state in which the district court sits has a cognizable interest, the appellant still cannot prevail.

■ New York may indeed have an abiding concern in allocating the proceeds of a wrongful death action among the survivors who are its domiciliaries, and that interest may be respected by New Jersey courts. *Mellk v. Sarahson*, 49 N.J. 226, 229 A.2d 625 (1967); *Henry v. Richardson-Merrill*, 508 F.2d 28 (3d Cir. 1975). But it is quite

another matter to say that New York may abrogate the limitations which New Jersey has chosen to impose upon those who practice in its courts. In the exercise of its paramount concern with its courts, New Jersey is free to provide that no party may be required to pay an excessive contingent fee to utilize its legal processes. We perceive no reason why such a beneficial provision should be denied litigants who are non-residents. Indeed, it may be questioned whether such an exclusion would be valid.

Moreover, we note that appellant has failed to overcome two other formidable obstacles. The question of which schedule of fees should be used apparently was never called to the attention of the Surrogate and he made no ruling on the point. As a result, there was no direct conflict between the District Court of New Jersey and the Surrogate's Court. It is also pertinent that the Surrogate had no jurisdiction over the defendant to whom the district court's order was directed, the defense attorneys, plaintiff's New Jersey counsel or the fund from which payment was to be made.[10]

The order of the district court was not erroneous and, accordingly, it will be affirmed.

JAMES HUNTER, III, Circuit Judge (dissenting):

I respectfully dissent from the majority's holding that the district court had jurisdiction to order a deposit of the amount of attorneys' fees in excess of the New Jersey fee schedule.

This case was dismissed by an order on March 18, 1975, "without prejudice to the right, for good cause shown within 60 days, to reopen the action if settlement is not consummated." One thirty-day extension

---

**10.** It is apparent that the Surrogate recognized the limitations on his jurisdiction. The order in its final form read that "the defendants, Metropolitan Freight Carriers, Inc. and Joseph Hardy, are authorized to disburse and distribute the settlement proceeds as follows:" Thus, insofar as the defendants were concerned, the Surrogate purported only to approve, not to direct.

of the time to reopen was granted but no one moved to reopen the case within the extended time, and no further extensions were sought.

Two weeks after the right to reopen the case expired, the parties requested the district court's signature approving their settlement and the New York Surrogate Court's decree.[1] The court was aware of its post-dismissal lack of jurisdiction[2] but proceeded to assert jurisdiction based on its ability to enforce the local court rules among attorneys admitted to practice before it.[3]

According to the majority opinion there are two theories of jurisdiction: the power to reopen the case under Rule 60 of the Federal Rules of Civil Procedure, and the court's authority to regulate professional conduct of members of its bar. As for the first theory, whatever ability the court may have had to reopen the case was not exercised. Neither the parties nor the court acted under Rule 60 to amend the prior order. That the court could have had jurisdiction does not mean that it did have jurisdiction.

The second theory of jurisdiction is more disturbing. The district court claimed an ability to regulate the contingent fee agreement of a New York attorney and his New York client because that fee resulted from

the settlement of a case that had once been before the court. The majority declares that this is not erroneous, but I am not persuaded. In *Garrett v. McRee*, 201 F.2d 250 (10th Cir. 1953), relied upon by the majority, the court had jurisdiction of the underlying suit.[4] In *Schlesinger v. Teitelbaum*, 475 F.2d 137 (3d Cir.), *cert denied*, 414 U.S. 1111, 94 S.Ct. 840, 38 L.Ed.2d 738 (1973), it was during the course of the trial that the settlement was finalized and approved by the district court, before any dismissal of the case. *Id.* at 138. Here, on the other hand, the underlying wrongful death suit had been dismissed before the settlement was finalized and the issue of attorneys' fees arose, yet the court asserts an ability to "retain" jurisdiction of this issue, even though the substantive suit has been dismissed.

If the parties had not requested the district court's imprimatur on their settlement and on the New York Surrogate's decree, I doubt that the district court would have notified the New York attorneys that their contingent fee agreement made in New York with their New York client violated New Jersey's fee schedule. To say that the attorneys' act of coming before the court after the case had been dismissed enabled the court to "retain" jurisdiction of the case to the extent necessary to regulate their resulting contingent fees is to misconstrue the requirement of subject matter jurisdiction.

1. There is some uncertainty in the record as to whether the district court's approval was necessary at this point. "It may be immaterial to you whether I sign this order or not. If so, you are free to walk out of here so far as this litigation is concerned." Record at 18.

2. When the parties requested the court to act on the Surrogate's decree, the court hesitated, saying, "I may be wrong. I think—if the matter is dismissed, it is dismissed. I am not asserting more jurisdiction than I have." Record at 18.

3. The court thought it lacked jurisdiction of the case but could still decide attorneys' fees:

    While it is true that this order probably worked to divest this Court of jurisdiction over the substantive aspect of this litigation,

. . . nonetheless, the present matter of attorneys' fees does not address itself to the merits of the [wrongful death] dispute . . . which are concededly foreclosed by the order of the Court. Rather, this proceeding goes to the ability of this Court to maintain and enforce its own Rules among members of the Bar admitted to practice before it. Thus, clearly, the Court retains jurisdiction to this extent in order to prevent a breach of its own rules by officers of its own Court.

Record at 140.

4. After the verdict was affirmed on appeal, the judgment proceeds were accordingly deposited with the district court, subject to an attorney's lien for the disputed amount. *Garrett v. McRee*, 201 F.2d 250, 252 (10th Cir. 1953).

Assuming that the district court would be correct in applying New Jersey's fee schedule to a contingent fee agreement between non-residents, in a diversity case,[5] that authority would derive from the court's jurisdiction of the case. Here the district court claims, and the majority agrees, that it has jurisdiction to regulate fees in this case because when it does have jurisdiction it can regulate fees. This circular reasoning does not produce subject matter jurisdiction in a federal court.

In my opinion the district court was without jurisdiction to order a deposit of the amount by which the attorneys' fees exceeded New Jersey's fee schedule. Accordingly, I would vacate the order of the district court.

---

**5.** Under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny, a federal court sitting in diversity applies its own procedures and the forum state's substantive law. Thus the threshold inquiry is whether a limit on contingent fees is substantive or procedural in terms of *Erie.* The regulation of attorneys' fees is generally held to be substantive. *See* 1A Moore's Federal Practice ¶ 0.310, n. 25t (1975 Supp.).

This case is complicated by conflict of laws implications. Under *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the federal court is to apply the forum state's conflicts rules. Although New Jersey might apply New York law in the wrongful death action, it is not clear what law New Jersey would apply to the fee agreement. As a contract, the fee agreement might be governed by the place of making (New York), unless the agreement contravenes a strong substantive policy of the forum.

The fee schedule was promulgated by the New Jersey Supreme Court under its authority to regulate practice in state courts and the professional behavior of state attorneys. *American Trial Lawyers Ass'n v. New Jersey Supreme Court,* 66 N.J. 258, 330 A.2d 350 (1974). Here we have neither a state court not a state attorney, leading me to ask first if a New Jersey state court would choose to apply its fee schedule to such a case and second, if it did so choose, whether it would have the authority to do so. The federal court attempting to follow *Klaxon* is left with the problem of predicting what law a state court would apply here if the case were not in a state court. The question is not an easy one.