196 N.J. Super. 349 (1984)
482 A.2d 536
BAMBI, AN INFANT, AND JOHN AND MARSHA, HER PARENTS, PLAINTIFFS,
v.
Dr. O, AN OBSTETRICIAN, AND G, A GENERAL HOSPITAL, DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided July 10, 1984.
*350 Harold Ritvo for plaintiffs (Gruen and Ritvo, attorneys).
Richard Brennan for defendant Dr. O (Shanley & Fisher attorneys).
Roger G. Ellis for defendant G (Bumgardner, Hardin & Ellis, attorneys)
SIMPSON, A.J.S.C.
This is an uncontested application under R. 1:21-7(f), prior to the January 16, 1984 amendments to R. 1:21-7 as to contingent fees, for an increased attorney's fee in excess of the amount allowable under a contingent-fee agreement or R. 1:21-7(c). The real names of the parties are not used  to protect the *351 parents and child and because the settlement was on a "no publicity" basis.
Bambi was born July 29, 1978, is severely mentally retarded, and suffers from convulsions secondary to brain damage. While the child may live a normal life span, she will never develop capabilities beyond that of a six-month old baby. Although presently at home, it is expected that she will have to be institutionalized in about two years. The malpractice alleged was failure to use available electronic fetal heart monitoring during labor, but proximate causation of injury to the child was seriously disputed. There was extensive preparation for trial and a structured settlement reached just before the jury was to be drawn.
John and Marsha have waived their personal claims and the entire net aggregate recovery will be for the care and maintenance of Bambi for the rest of her life. Plaintiffs' counsel wisely engaged a structured settlement specialist, Richard G. Halpern, to help negotiate an improved package over the original offer by defendants  with excellent results. The total settlement was $775,000, with $155,000 "up front" cash to cover requested counsel fees and disbursements and the balance used to purchase a single premium deferred annuity. If any of the $155,000 cash is not needed for counsel fees and disbursements, such excess will be deposited in the Bergen County Surrogate's intermingled account[1] for the benefit of Bambi.
The structured settlement cost $619,233 and the payouts are shown on exhibits I, II, and III. Because the child is otherwise presently provided for  and to increase the future payments for her benefit  the monthly annuity payments will begin July 15, 1986 and continue for her lifetime or 40 years, whichever is *352 longer. To provide a hedge against inflation, these payments increase by 5% compounded annually. Beginning with the third year, there are lump sum payments every five years  starting at $30,000 and ending in year 50 at $1,500,000. These "balloon" payments are all guaranteed, so that the minimum guaranteed payout[2] is $9,707,544. The total through year 50 would be $12,598,914 as shown on exhibit III and the increasing monthly annuity payments would also continue thereafter as long as Bambi survives.
Although there was little likelihood of liability on the part of the hospital, G contributed $25,000 towards the settlement. The doctor's insurance carrier paid $750,000 out of its one million dollar policy. Pursuant to I.R.C. § 104(a)(2) and N.J.S.A. 54A:6-6(b) the interest income portion of the annuity payments will be free of federal and New Jersey income taxes. A tax expert, Edward J. Trawinski, certified a minimum estimated tax saving over 50 years of $997,750. The internal rate of return, locked-in for the longer of 40 years or the child's lifetime is 11.5%. Since the defendant doctor and his insurance carrier wanted an absolute release from any future liability, advantage was taken of I.R.C. § 130[3] and liability transferred to Metropolitan Life Insurance Company (annuity underwriter) and Metropolitan Reinsurance Company (assignee and policy owner). These companies are rated A or A + (the highest) by A.M. Best Company. The settlement achieved in this case benefited the plaintiffs, defendants, liability carrier, and the public. All trial risks and cost thereof to the public were avoided. The child will receive the finest possible care for life and never become a public charge. The insurance industry presumably benefits by the differential between external and *353 internal rates of return, at the same time that the annuitant benefits by favorable tax treatment assuring a better net rate of return than probably otherwise available.
The amount of the fee application is $148,900.66. Counsel does not seek application of the higher percentages allowable under R. 1:21-7(c) as to agreements entered into after January 15, 1984  since the contingent fee agreement was signed July 25, 1980. What is sought is an increase from 10% to about 18.1% of recovery over $250,000 under R. 1:21-7(c)(6) of the scale in effect from November 1, 1976 to January 15, 1984. Actually, counsel's secretary had typed on the contract the pre-November 1, 1976 scale,[4] but this court as well as plaintiffs Marsha and John accepted the explanation of the typographical error. In any event, the application is under R. 1:21-7(f) for a reasonable fee in light of all the circumstances. Bambi's parents concurred in the requested fee, and this is entitled to consideration but is not controlling. Murphy v. Mooresville Mills, 132 N.J. Super. 197 (App.Div. 1975); Landgraf v. Glasser, 186 N.J. Super. 381 (Law Div. 1982). Disbursements totalled $6,699.30 and the R. 1:21-7(d) net aggregate recovery was therefore $768,300.70.[5] The calculations under R. 1:21-7(c) and the request are as follows:

 R. 1:21-7(c) % On Allowable Requested
 (1) through (4) 25 100,000.00 25,000.00 25,000.00
 (5) 20 150,000.00 30,000.00 30,000.00
 (6) 10 518,300.70 51,830.07 93,900.66[*]
 ___________ ___________ ___________
 $768,300.70 $106,830.07 $148,900.66
 =========== =========== ===========

Overall, the requested fee of $148,900.66 amounts to 19.38% of the net aggregate recovery of $768,300.70. Under *354 the new R. 1:21-7(c) effective January 16, 1984 the maximum allowable fee would have been 25% up to $500,000 and 20% on the remaining $268,300.70 or a total of $178,660.14. Using this comparison, the request is not unreasonable, since recoveries and settlements have presumably increased with inflation from 1980 (when the fee arrangement was signed) to 1984 (when the case was settled), while the R. 1:21-7(c) scale did not. Iskander v. Columbia Cement Co., 192 N.J. Super. 114, 126-127 (Law Div. 1983). The sought increase also compares favorably with a number of other cases wherein this court has allowed an increase in the 10% multiplier to 20%. Merendino v. FMC Corp., supra, n. 1 and cases cited in Burd v. Hackensack Hospital Assoc., 195 N.J. Super. 35 (Law Div. 1984). Although accurate time records were not kept, counsel's certification detailed four years of extraordinary efforts in fully preparing the case for trial  which led directly to the most favorable settlement. In sum, the claim of inadequacy of the fee allowable under the rule was "thoroughly substantial and documented."[6]
For all of these reasons, the submitted order has been completed to allow a counsel fee of $148,900.66 plus disbursements of $6,699.30, and counsel should file copies of all papers on this application with the Administrative Office of the Courts as required by R. 1:21-7(f).

EXHIBIT I
THE PENSION COMPANY
 May 29, 1984
 Harold Ritvo, Esquire GRUEN & RITVO 15 Main Street Hackensack, NJ
 07601
*355
 RE: BAMBI  SETTLEMENT ANNUITY
Dear Mr. Ritvo:
As you have requested, below please find confirmation of the benefits used in the settlement of the captioned party's case.

DESCRIPTION OF BENEFIT
Life Annuity with 40 years payments guaranteed to heirs in the event of premature death, providing $3,000 per month, increasing by 5% compounded annually, with first payment commencing in two years and one month.

Plus, Lump Sum Payments of: $ 30,000 in 5 years
 $ 60,000 in 10 years
 $ 140,000 in 15 years
 $ 250,000 in 20 years
 $ 350,000 in 25 years
 $ 500,000 in 30 years
 $ 700,000 in 35 years
 $1,000,000 in 40 years
 $1,300,000 in 45 years
 $1,500,000 in 50 years

The company with whom this annuity is to be placed is the Metropolitan Life Insurance Company, and the policy is to be owned and guaranteed by Metropolitan.
Should you have any further question regarding this matter, please don't hesitate to contact us.
 Sincerely,
 Frank A. Pension
 FAP/phm

*356 EXHIBIT II
THE PENSION COMPANY
 June 12, 1984
 Harold Ritvo, Esquire GRUEN & RITVO, ESQS. 15 Main Street
 Hackensack, New Jersey 07601
 RE: BAMBI  SETTLEMENT ANNUITY
 BAMBI V. DOCTOR O & G
Dear Mr. Ritvo:
In accordance with your request, we are pleased both to answer some questions and also to enclose some materials which we hope to be helpful in finalizing the approval of the settlement of the captioned case.
Metropolitan Life Insurance Company ("Metropolitan Life") will issue the annuity contract. Metropolitan Reinsurance Company ("Metropolitan Re.") will be the third party assignee required in this case. Metropolitan Re. is a wholly-owned subsidiary of Metropolitan Life, and the officers and directors of the two companies are essentially the same.
We enclose a copy from Best's Agents Guide to Life Insurance Companies which describes the parent company as rated A + with a financial size category of XV. Descriptions of the designations from the Preface to the Guide are also enclosed for your reference. Please note the statement that A + and A are both excellent in the Best system of rating.
We are unable at the moment to provide you with similar reference to the subsidiary as this information is to be found in Best's Insurance Reports, Property and Casualty Edition, a reference book we do not keep in our business library. We have asked our representative at

*357 EXHIBIT II
Metropolitan Life to send us this material, and will be pleased to forward it to you when we receive it. Meanwhile, of course, it is available from A.M. Best Company, Oldwick, New Jersey 08858 (telephone XXX-XXX-XXXX) and from that source in the reference department of a mercantile library. Metropolitan Re. is rated A.
The internal rate of return you had questioned is 11.5%.
A Schedule of Payments is enclosed.

 EXHIBIT III
 MONTHLY LUMP SUM TOTAL ANNUAL TOTAL PAYMENTS
YEAR ANNUITY PAYMENT PAYMENTS INCOME TO DATE 
 3 $ 3,000.00 $ 36,000 $ 36,000
 4 3,150.00 37,800 73,800
 5 3,307.50 $ 30,000 69,690 143,490
 6 3,472.88 41,675 185,165
 7 3,646.52 43,758 228,923
 8 3,828.84 45,946 274,869
 9 4,020.29 48,243 323,112
 10 4,221.30 60,000 110,656 433,768
 11 4,432.37 53,188 486,956
 12 4,653.98 55,848 542,804
 13 4,886.68 58,640 601,444
 14 5,131.02 61,572 663,017
 15 5,387.57 140,000 204,651 867,667
 16 5,656.95 67,883 935,551
 17 5,939.79 71,278 1,006,828
 18 6,236.78 74,841 1,081,670
 19 6,548.62 78,583 1,160,253
 20 6,876.05 250,000 332,513 1,492,766
 21 7,219.86 86,638 1,579,404
 22 7,580.85 90,970 1,670,374
 23 7,959.89 95,519 1,765,893
 24 8,357.89 100,295 1,866,188
 25 8,775.78 350,000 455,309 2,321,497
 26 9,214.57 110,575 2,432,072
 27 9,675.30 116,104 2,548,176
 28 10,159.06 121,909 2,670,084
 29 10,667.02 128,004 2,798,089
 30 11,200.37 500,000 634,404 3,432,493
 31 11,760.30 141,125 3,573,618
 32 12,348.41 148,181 3,721,799
 33 12,965.83 155,590 3,877,388
 34 13,614.12 163,369 4,040,758
 35 14,294.82 700,000 871,538 4,912,296
 36 15,009.57 180,115 5,092,411
 37 15,760.04 189,121 5,281,531
 38 16,548.05 198,577 5,480,108

*358
 39 17,375.45 208,505 5,688,613
 40 18,244.22 1,000,000 1,218,931 6,907,544
 41 19,156.43 229,877 7,137,421
 42 20,114.25 241,371 7,378,792
 43 21,119.97 253,440 7,632,231
 44 22,175.96 266,112 7,898,343
 45 23,284.76 1,300,000 1,579,417 9,477,760
 46 24,449.00 239,388 9,771,148
 47 25,671.45 308,057 10,079,206
 48 26,955.02 323,460 10,402,666
 49 28,302.77 339,633 10,742,299
 50 29,717.91 1,500,000 1,856,615 12,598,914

NOTE: SINCE FIRST PAYMENT IS DEFERRED FOR 2 YEARS AND 1 MONTH, THE BENEFITS WILL BEGIN IN YEAR 3.
NOTES
[1] For calendar year 1984 the account earns interest at 10.2% compounded daily, for an effective annual yield of 10.89%. For prior rates, see Merendino v. FMC Corp., 181 N.J. Super. 503 (Law Div. 1981) n. 2; Pettiford v. Eskwitt, 189 N.J. Super. 485 (Law Div. 1983) n. 1.
[2] $6,907,544 at the end of year 40, plus the $1,300,000 lump sum at year 45 and the $1,500,000 lump sum at year 50  all as shown on exhibit III.
[3] Available for taxable years ending after December 31, 1982 and added to the Code by the Periodic Payment Settlement Act of 1982. Pub.L. 97-473 (1982).
[4] See Pressler, Current N.J. Court Rules, Comment R. 1:21-7(c) (1984).
[5] Total settlement of $775,000 less $6,699.30.
[*] 18.1%
[6] Pressler, Current N.J. Court Rules, Comment R. 1:21-7(f) (1984).