206 N.J. Super. 132 (1985)
501 A.2d 1057
TIMOTHY ANDERSON AND JOHN ANDERSON, PLAINTIFFS,
v.
KENNETH J. CONLEY, JOHN H. CONLEY, JR., CLUB ELMOUR AND ORCHARD TAVERN ASSOCIATION, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
September 3, 1985.
*134 James Pantages for plaintiffs (Stein, Bliablias, McGuire & Pantages, attorneys).
Peter L. Korn, former attorney for plaintiffs (McDonough, Murray & Korn, attorneys).
Edwin J. McCreedy, court appointed attorney for plaintiffs (McCreedy & Cox, attorneys).
Walter L. Leib for Aaron J. Broder (Leib, Kraus & Grispin, attorneys).
McGRATH, J.S.C.
This matter came before the court on a motion for determination of counsel fees by Stein, Bliablias, McGuire & Pantages, attorneys for plaintiffs John and Timothy Anderson. This fee dispute between New Jersey and New York counsel raises four issues for determination by the court: first, New Jersey courts' jurisdiction over the fee dispute; second, determination of the overall counsel fee; third, Aaron J. Broder's application for an increased fee pursuant to R. 1:21-7(f); and fourth; the division of fees between New Jersey and New York counsel.

I.

BACKGROUND
John and Timothy Anderson sustained serious injuries as a result of an automobile accident which occurred on December 20, 1982. The Anderson brothers, ages 18 and 19 respectively, were passengers in a car driven by their friend Kenneth J. Conley. The car was owned by John H. Conley Jr., Kenneth's father. At approximately 12:30 a.m., while traveling along Colonial Avenue in Union, New Jersey, the car went out of control striking a retaining wall and telephone pole. This was a one car accident. Earlier that evening, Kenneth was served alcoholic beverages by at least two bars in Union County, New *135 Jersey. He was not of legal drinking age and his blood alcohol level contributed to the occurrence of the accident.
Timothy Anderson fractured his right ankle and sustained multiple lacerations to his face. John Anderson fractured the vertebrae in his cervical spine which led to a spinal cord contusion. As a result, John is now a quadraplegic. These injuries became the basis for the brothers' claims and the claims of their parents for damages against defendants Kenneth J. Conley, John H. Conley Jr., Club Elmour, and Orchard Tavern Association. At the time of the accident, the Anderson family lived and have continued to live in Union, New Jersey. The ultimate defendants were New Jersey residents or corporations.
In February 1983, the Anderson family retained the New Jersey law firm of McDonough, Murray & Korn (Korn firm) to pursue their damage claims arising out of the accident. The Andersons executed retainer agreements which provided that the Korn firm would be paid on a contingent fee basis in accordance with R. 1:21-7(c), as effective in February 1983.
In May 1983, the Andersons discharged the Korn firm and retained Aaron J. Broder (Broder firm) of New York City. The court concludes that the Andersons' change in counsel was motivated by their desire for a cash settlement which was advocated by the Broder firm. Whereas, in light of John Anderson's permanent injuries, a structured settlement was suggested by the Korn firm. The Andersons executed New York retainer agreements which provided that the Broder firm would be paid on a 25% contingent fee basis. Albeit these retainer agreements provided for a fee less than the Broder firm's usual 33 1/3%, they yield a fee far above that allowable under the New Jersey court rules. Pursuant to R. 1:21-7(c), as effective in May 1983, the counsel fee would be $169,205.75. In contrast, the counsel fee under the New York retainer agreement would be $336,847.70.
*136 Prior to releasing the file, the Korn and Broder firms discussed the payment of the Korn firm's fee. A letter from Peter L. Korn to G. Michael Simon of the Broder firm dated May 11, 1983, memorialized their understanding. The letter provided in pertinent part as follows:
You have agreed to recognize our possessory lien on the file; in consideration of our willingness to transfer the title to you before we receive any fee, you have agreed to transfer that lien to any proceeds, either of settlement or verdict, which you may receive through the handling of these matters. Once the cases have been resolved and the proceeds forwarded to you, we will either mutually agree upon what this office's fee will be or, absent agreement, submit the matter to a New Jersey court for determination of the appropriate fee in a summary fashion. In the event that an action is pending in New Jersey at the time that the fee is to be determined, we agree that that case will serve as the vehicle to submit the matter to the court for determination. In the event that no law suit has been filed as of the time that you receive proceeds, we have the right to institute a separate action in New Jersey and you have agreed to submit to the jurisdiction of New Jersey Courts for such a decision. I have one additional request that I did not discuss with you on the telephone. Because I am not aware of your relationship to the law firm, nor of the particular corporate identity of the firm, we will require a statement from a principal of the firm either acknowledging this understanding or authorizing you to so acknowledge.
This understanding was acknowledged by Simon as managing attorney on May 18, 1983.
After receiving the file, the Broder firm retained the New Jersey firm of Stein, Bliablias, McGuire & Pantages (Pantages firm) on an hourly basis to act as local counsel. On June 15, 1983 a complaint was filed against the various defendants in the Superior Court of New Jersey, Law Division, Union County, on behalf of John and Timothy Anderson by the Pantages firm.
In August 1984, a cash settlement was achieved at $1,350,000. The Broder firm contends that the total settlement represented separate settlements as follows: $1,000,000 on behalf of John Anderson, $275,000 on behalf of William and Theresa Anderson (the parents), and $75,000 on behalf of Timothy Anderson. As reflected in the Broder firm's closing statement, their fee after compensating the Pantages firm, was $329,879.03. A stipulation of dismissal with prejudice was entered on October 2, 1984. These settlement monies have been distributed *137 and the fee charged by the Broder firm has not been held in escrow pending this review. The Pantages firm has been paid by the Broder firm for services rendered on an hourly basis.
At this juncture, the Korn firm's fee had to be addressed. The Korn firm objected to the Broder firm charging the Andersons a fee far in excess of that allowable under the New Jersey court rules. The Korn firm stated that they would not and could not participate in any share of a fee in excess of what is allowable. Thus, the Pantages firm, as counsel of record for plaintiffs, properly brought this matter to the court for a determination of the overall counsel fee and the Korn firm's fee.
This court heard oral argument on December 14, 1984. Subsequently the various parties filed additional briefs, affidavits and certifications in support of their positions. The Broder firm has retained Walter L. Leib of the New Jersey firm of Leib, Kraus & Grispin to represent them in this fee dispute. Leib filed a cross-motion for an increase in the Broder firm's fee pursuant to R. 1:21-7(f).
To date, the Broder firm has not been admitted pro hac vice, nor have they applied for such status. The Korn firm argues that the briefs and other supporting documents submitted by the Broder firm should not be considered by the court. Furthermore, the Korn firm argues that the Broder firm's position should be presented to the court only through Leib. The court finds it necessary to review the positions of all of the parties concerned. Therefore, the court has considered all the papers filed by the various parties.
In addition, the court realized that the Anderson family was left without counsel to represent their interests in this fee dispute. Therefore, the court appointed Edwin J. McCreedy of the New Jersey firm of McCreedy & Cox to represent the Andersons.

*138 II.

JURISDICTION
The threshold issue in the resolution of this matter is whether the New Jersey courts have jurisdiction. The Broder firm argues that the New Jersey courts have no jurisdiction to entertain the present motion. They view their fee arrangements with the Andersons as separate New York contracts somehow independent from the New Jersey litigation. Both the Korn firm and the Andersons take the position that the New Jersey courts have jurisdiction.
The court finds that its jurisdiction over this fee dispute is unquestionable. Clearly, the underlying lawsuit and derivative issues have a significant nexus with New Jersey. This litigation arose from an automobile accident which occurred in this State. The Andersons were New Jersey residents and all defendants were either New Jersey residents or corporations. Furthermore, the complaint was filed in the Superior Court of New Jersey, Law Division, Union County by the Pantages firm.
As local counsel retained by the Broder firm, the Pantages firm prosecuted the case in New Jersey. The affidavit of services submitted by the Pantages firm reflects that extensive pretrial work was conducted in the following areas: pleadings, interrogatories, review of medical records, motion work, legal research, court appearances, numerous telephone conferences and correspondence with the various parties.[1] Furthermore, the Pantages firm appeared at the only deposition taken in this case. This deposition of plaintiffs was conducted at the offices of the New Jersey firm of Conway & Reisman on April 24, 1984.
It is well settled that our State Supreme Court can regulate fee arrangements between attorneys and their clients pursuant *139 to its rule-making power. This rule-making power is vested in the Supreme Court by N.J. Const. (1947), Art. VI, § II, par. 3, which provides:
The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts. The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted.
American Trial Lawyers Assoc. v. N.J. Supreme Court, 126 N.J. Super. 577, 586-587 (App.Div. 1974); aff'd 66 N.J. 258 (1974). Contingent fees in tort actions have been subject to strict judicial supervision. Id., 126 N.J. Super. at 588. Furthermore, our court rules regarding contingent fees do not abridge the right to freedom of contract or violate equal protection under the law. Id., 126 N.J. Super. at 591-92.
In Elder v. Metropolitan Freight Carriers, Inc., 543 F.2d 513, 515 (3 Cir.1976), the circuit court affirmed the district court's reduction of a New York fee award in accordance with New Jersey rules. The circuit court commented: "In the exercise of its paramount concern with its courts, New Jersey is free to provide that no party may be required to pay an excessive contingent fee to utilize its legal process." Id. at 519.
The Broder firm argues that they do not fall within the province of our State Supreme Court's regulatory powers because they were not admitted pro hac vice nor did they appear otherwise prior to this motion. The reality of the situation, however, is that the Broder firm avoided the direct application of our court rules by hiring "local counsel." This device of hiring local counsel on an hourly basis and then charging a contingent fee above that allowable under our rules is frequently employed by out-of-state firms. The frequency of the use of this device does not lend it credibility. The abrogation of our court rules in this manner by out-of-state attorneys will no longer be tolerated.
The Pantages firm was more than a mere foil for the Broder firm. As reflected in the Pantages firm's affidavit of services, substantial work was performed in New Jersey in the prosecution *140 of this litigation. To accept the Broder firm's argument would be tantamount to allowing the circumvention of R. 1:21-7. With this litigation's overwhelming New Jersey contacts, the device employed by the Broder firm does not operate to remove this matter from under our jurisdiction.
Although the Broder firm was not formally admitted to our courts, substance must prevail over form. The court finds that the Broder firm was "appearing" in our courts for purposes of applying R. 1:21-7 to this dispute. The Broder firm's decision to act through the admission privileges of the Pantages firm does not negate the attorney-client relationship with New Jersey residents in a New Jersey lawsuit. The court does not make this finding to curb the Broder firm's cupidity, but rather to enforce the integrity of our rules as promulgated by the New Jersey Supreme Court.
In support of its position the Broder firm advances two additional arguments. First, they contend that the stipulation of dismissal with prejudice terminates the court's jurisdiction. Second, they contend that the settlement on behalf of the Anderson parents is beyond the court's jurisdiction. The court finds both of these arguments unpersuasive.
Under the present circumstances, the stipulation of dismissal with prejudice does not terminate the court's jurisdiction over the payment of attorneys fees. R. 1:21-7 applies to contingent fees in cases which go to trial as well as those which are settled. The Broder firm attempts to distinguish Elder v. Metropolitan Freight Carriers, Inc., supra, on the fact that in Elder the parties voluntarily submitted to the court's jurisdiction. However, a reasonable reading of the letter, see 136 supra, dated May 11, 1983, between the Korn and Broder firms, demonstrates that the Broder firm acquiesced to the jurisdiction of our courts in the event of a fee dispute. The letter and the Broder firm's acknowledgement thereof clearly express the intention of both parties that the "determination of the appropriate fee" is to be decided by the New Jersey courts *141 if there is a lack of accord. The court must determine the overall fee before an allocation between counsel can be made.
The settlement on behalf of the Anderson parents is the settlement of a derivative claim. See R. 1:21-7(d). Albeit the Anderson parents were not named plaintiffs in the lawsuit, their recovery was entirely dependent upon the recovery of their sons, the plaintiffs. Thus, the court has jurisdiction over the counsel fees based upon the entire settlement.
In Estate of Vafiades v. Sheppard Bus Service, 192 N.J. Super. 301 (Law Div. 1983), the court considered the application of R. 1:21-7 to out-of-state counsel. While the professional misconduct in Vafiades is not present in this case and the attorneys in Vafiades formally sought pro hac vice admission, the decision is helpful to the court in the resolution of the instant fee dispute. In Vafiades, the court applied R. 1:21-7 to the out-of-state attorneys for their handling of a New Jersey case. 192 N.J. Super. at 315.
In Burd v. Hackensack Hospital Ass'n, 195 N.J. Super. 35 (Law Div. 1984), plaintiff's attorney applied for an increased fee pursuant to R. 1:21-7(f). Plaintiff entered into a retainer agreement with New York counsel for a 33 1/3% contingent fee. This medical malpractice case was successfully tried in New Jersey. 195 N.J. Super. at 37. There was no attempt to enforce the New York retainer agreement in our courts; instead, plaintiff's counsel applied for an increase in fees under our rules. Furthermore, Judge Simpson did not suggest that the New York retainer agreement would be enforceable in this State. The Broder firm attempts to distinguish Burd by highlighting the fact that in Burd, New York counsel was admitted to and formally appeared in New Jersey. This distinction is without import in light of this court's determination that the Broder firm "appeared" in New Jersey for purposes of the application of R. 1:21-7; albeit through the auspices of the Pantages firm.
Therefore, based upon the aforementioned reasons, the court finds that this entire fee dispute is amenable to the jurisdiction *142 of the New Jersey courts and R. 1:21-7 is to be applied in determining counsel fees. Now that our jurisdiction over the matter has been established, the court shall specifically address the calculation of counsel fees.

III.

THE OVERALL COUNSEL FEE
The next question for the court to address is the calculation of the overall counsel fee. Contingent fees are governed by R. 1:21-7; specifically, R. 1:21-7(c) sets forth the formula for fee calculation. The Broder firm was retained by the Andersons in May 1983; R. 1:21-7(c) was amended on January 16, 1984; and the case was settled in August 1984. Therefore, the retroactivity of the rule, as amended, becomes an issue.
The Andersons' position is that R. 1:21-7(c), as amended, on January 16, 1984 (the 1984 rule) is not retroactive. They contend that the 1984 rule only applies to retainer agreements entered into on and after the date of the amendment. Thus, their position is that R. 1:21-7(c) as effective in May 1983 (the 1983 rule) applies to the fee calculations in this case. The Broder firm argues that the 1984 rule applies to preamendment contingent fee agreements under the present circumstances.
There is a substantial difference in the fee yielded between calculations under the 1983 and 1984 rules. The total settlement was $1,350,000. In calculating the fee, attorneys' costs are first to be deducted from the gross recovery. R. 1:21-7(d). The court has relied upon the closing statement prepared by the Broder firm for an accounting of costs which total $2,609.20. The net recovery upon which the R. 1:21-7(c) formula is to be applied is calculated as follows:

 gross settlement $ 1,350,000.00
 costs - 2,609.20
 ______________
 net settlement $ 1,347,390.80

*143 Under R. 1:21-7(c), as effective in May 1983, the counsel fee would be calculated as follows:

R. 1:21-7(c) Totals
(1) 50% on the first $1,000.00 = $ 500.00
(2) 40% on the next 2,000.00 = 800.00
(3) 33-1/3% on the next 47,000.00 = 15,666.67
(4) 25% on the next 50,000.00 = 12,500.00
(5) 20% on the next 150,000.00 = 30,000.00
(6) 10% on the next 1,097,390.80 = 109,739.08
 __________
 total counsel fee = 169,205.75

Under R. 1:21-7(c), as amended in January 1984, the counsel fee would be calculated as follows:

R. 1:21-7(c) Totals
(1) 33-1/3% on the first $250,000.00 = $ 83,333.33
(2) 25% on the next 250,000.00 = 62,500.00
(3) 20% on the next 500,000.00 = 100,000.00
(4) 10% on the next 347,390.80 = 34,739.08
 __________
 total counsel fee = $280,572.41

R. 1:21-7(c)(4) provides that fees on amounts recovered in excess of $1,000,000 shall be set by the court by application pursuant to R. 1:21-7(f). The court has chosen 10% for purposes of this calculation.
In comparison, the counsel fee calculated under the New York retainer agreement far exceeds the fee yielded by the 1983 and 1984 rules. The fee charged by the Broder firm was calculated as follows:

 net settlement $ 1,347,390.80
 25% retainer × .25
 ______________
 total counsel fee = $ 336,847.70

*144 The Broder firm's closing statement reflects that they paid the Pantages firm a fee of $6,968.67. Therefore, the Broder firm actually retained $329,879.03.
We now return to the retroactivity issue noted earlier in this opinion. Under the present circumstances, the court finds that the 1984 rule should not be afforded retroactive effect.
As cited by the Broder firm in McMullen v. Conforti & Eisele, 67 N.J. 416, 418 (1975), the New Jersey Supreme Court gave retrospective effect to the then newly passed contingent fee rule. R. 1:21-7. There plaintiff and counsel entered into a written fee contract in June 1969; the contingent fee rule became effective in January, 1972; and the case was settled in June 1972. The Court held that the new rule was to govern the calculation of the fee instead of the pre-existing fee contract. The Court relied upon its decision in American Trial Lawyers Assoc., v. New Jersey Supreme Court, supra, which upheld the constitutionality and validity of R. 1:21-7. McMullen, 67 N.J. at 418.
The Broder firm's reliance upon McMullen as authority for giving retrospective effect to R. 1:21-7 is misplaced under the circumstances of this case. The underlying meaning to the Supreme Court's decision was the election to enforce the new contingent fee rule over a fee contract which was drafted when there was no rule in effect. In the present case, the contingent fee rule was in effect at the time of retention of the Broder firm and settlement; albeit, the formula of calculation was amended in January 1984. Here, the choice is not between the rule and a contract entered into when there was no rule. The issue before the court is the choice between the application of the 1983 and 1984 rules.
In Iskander v. Columbia Cement Co., Inc., 197 N.J. Super. 169 (App.Div. 1984), the court dealt directly with the retrospective effect of post-retainer rule changes.
A higher fee may be awarded on an attorney's motion only if the attorney can satisfy the court that the fee contracted for would not be "a reasonable fee in the light of all the circumstances." R. 1:21-7(f). Post-retainer rule changes *145 may be taken into consideration along with all other relevant facts. In a case like this one, in which a higher fee schedule existed for seven of the case's eight years, rule changes may be a matter of some weight in the court's thinking. Changes in fee schedules should not, however, automatically supersede existing retainer agreements. [Id. at 174-175.]
The Appellate Division's holding is clear that post-retainer rule changes are not to be afforded automatic retrospective effect and do not "create the right to a higher fee." Id. at 174.
Counsel fees which exceed the amount allowable under the rule in effect at the time the retainer agreement was executed may only be awarded by the court through a R. 1:21-7(f) application. Murphy v. Mooresville Mills, 132 N.J. Super. 197, 199 (App.Div. 1975). In the alternative, the Broder firm has properly filed a cross-motion for an increase in fees pursuant to R. 1:21-7(f). The merits of this application shall be addressed further in this opinion.
Furthermore, in all of the cases cited by the Broder firm in support of their position that the 1984 rule should be given retroactive effect, the courts considered fee increases pursuant to R. 1:21-7(f) applications. Post-retainer rule changes were merely factors considered by the courts under the circumstances of each individual case. The authority for fee increases was based soley upon R. 1:21-7(f). See Iskander v. Columbia Cement Co., Inc., 192 N.J. Super. 114 (Law Div. 1983), aff'd, 197 N.J. Super. 169 (App.Div. 1984); Bambi v. O., 196 N.J. Super. 349 (Law Div. 1984); A. v. D., 196 N.J. Super. 340 (Law Div. 1984); Burd v. Hackensack Hospital Ass'n, supra; Daly v. Great Atlantic & Pacific Tea Co., Inc., 191 N.J. Super. 622 (Law Div. 1983); Buckelew v. Grossbard, 189 N.J. Super. 584 (Law Div. 1983); and McNelis v. Cohen, 188 N.J. Super. 87 (Law Div. 1982).
Moreover, the court stated in Delle Fave v. Sanitation Equip. Corp., 197 N.J. Super. 555 (Law Div. 1984):
There may also be a misconception that the higher R. 1:21-7(c) scale, effective January 16, 1984, will be routinely applied retroactively. The Supreme Court has decided otherwise, although relief is still available in appropriate cases under R. 1:21-7(f). [at 563]
*146 The retroactive application of the 1984 rule would be adverse to the public interest. Kingman v. Finnerty, 198 N.J. Super. 14, 18 (App.Div. 1984). The Appellate Division expressly disapproved of Judge Simpson's decision in A. v. D., supra, to the extent that it afforded the 1984 rule retroactive effect. Kingman v. Finnerty, 198 N.J. Super. at 18-19.
Therefore, the court finds the 1984 rule is not to be afforded retrospective effect. The overall counsel fee is to be calculated under the 1983 rule which was in effect when the Broder firm was retained. The overall counsel fee amounts to $169,205.75.

IV.

THE BRODER FIRM'S APPLICATION FOR AN INCREASED FEE
The Broder firm filed a cross-motion for an increased counsel fee pursuant to R. 1:21-7(f). The rule provides in pertinent part as follows:
If at the conclusion of a matter an attorney considers the fee permitted by paragraph (c) to be inadequate, an application on written notice to the client may be made to the Assignment Judge for the hearing and determining of a reasonable fee in light of all the circumstances.
Judge Pressler's annotation to R. 1:21-7(f) notes that this application is to be made in an exceptional case. Pressler, Current N.J. Court Rules, Comment R. 1:21-7(f) (1985). The assignment judge is to determine what is a reasonable fee under the circumstances. I have decided this matter as the acting assignment judge.
R. 1:21-7(e) provides that "in all cases contingent fees charged or collected must conform to DR 2-106(A)." The New Jersey Supreme Court adopted a new set of disciplinary rules, effective in September 1984. DR 2-106(A) is now embodied in the rules of professional conduct. The Supreme Court's guidelines for the determination of a reasonable fee are exactly the same under DR 2-106(A) and RPC 1.5(a). The newly adopted *147 disciplinary rules merely renumbered this section. RPC 1.5(a) provides in pertinent part as follows:
Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) whether the fee is fixed or contingent.
In determining a reasonable fee the court considered these guidelines, the affidavits of services, and other supporting documents submitted by the various parties. The affidavits of services submitted by the Broder and Korn firms do not list precise hours and dates when the services were rendered. The court understands that it is not general practice to maintain such records when a contingent fee is involved. The court will be able to evaluate the services rendered and this application is not prejudiced by the lack of precise affidavits of services. See Bolle v. Community Memorial Hospital, 145 N.J. Super. 593, 596 (App.Div. 1976); Burd v. Hackensack Hospital Ass'n, supra.
Recently, in Wurtzel v. Werres, 201 N.J. Super. 544 (App.Div. 1985), the court set forth a two-part test to determine when an increased fee is warranted.
[T]he attorney must demonstrate that (1) the fee allowed under the rule is not reasonable compensation for the services actually rendered, and (2) the case presented problems which required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming. [at 549]
The burden rests with the Broder firm to justify an increased fee. The court finds that the Broder firm has failed to satisfy either part of the Wurtzel test. Although at the hearing the court commented that the results were "astounding", upon closer examination the court finds that the results were not *148 exceptional under the circumstances. The size of the settlement and the prowess of the Broder firm are paltry in comparison to the factors which the court finds controlling. Namely, John Anderson was left a quadraplegic as a result of the accident; he was only 18 years old; the case was settled within 14 months; and only one deposition was taken. While the Anderson family is satisfied with the result, the court cannot say that it was exceptional. This case is of the type which is ripe for settlement. It is not unreasonable to wonder whether more could have been done for John Anderson under the circumstances.
Upon review of the Broder firm's affidavit of services, the court finds that the discovery was quite routine. In comparing the affidavit of services submitted by the Broder and Pantages firms, the court finds that many hours of legal research were devoted to dram-shop liability and damages. This is not a new or curious area of the law, and the record does not reflect that any unusual issues were present. If there were a duplication of effort in this area, the additional time spent by counsel cannot be used to support an increased fee application. Furthermore, it is unquestionable that the Pantages firm performed a great deal of work which led to the settlement. Their fee amounted to less than $7,000.
The court does not wish to criticize the Broder firm's services, but it does want to emphasize that nothing out of the ordinary was done. Fee increases have been authorized in exceptional situations "where new law is established on appeal, Buckelew v. Grossbard, 189 N.J. Super. 584 (Law Div. 1983); or where a trial, appeal, and retrial are required, Harris v. Boland, 193 N.J. Super. 737 (Law Div. 1983)." Delle Fave v. Sanitation Equip. Corp., supra, 197 N.J. Super. at 563.
The court found that the 1984 rule was not to be afforded automatic retrospective effect for the reasons previously discussed in this opinion. The Broder firm further argues that the 1984 amendment should be considered as a factor in favor of *149 allowing an increased fee. However, the cases in which rule change influenced the court's decision to increase fees are distinguishable from the instant case.
In Daly v. Great Atlantic & Pacific Tea Co., supra, the court considered a R. 1:21-7(f) application in light of the existing contingent fee schedule. The retainer agreement was entered into in August 1976; the fee schedule was amended in November 1976; and the case was not concluded until April 1983. Clearly, most of the work was done after the amendment to the fee schedule. However, the court did recognize that it was a difficult case; there was a trial and appeal. These factors influenced the court's decision to authorize a fee increase.
In A. v. D., supra, the contingent fee retainer was signed in 1978 and the case ultimately was settled in 1984, after the 1984 amendment. The court recognized the difficulties in that case and the increase in fees during the six years of litigation. Id., 196 N.J. Super. at 346. The court concluded that an increased fee would reasonably compensate counsel under the circumstances.
Again, in Bambi v. O., supra, the court authorized a fee increase pursuant to R. 1:21-7(f). The contingent fee retainer was signed in 1980 and the case was settled in 1984. The court noted the time between retention and settlement as well as counsel's extraordinary efforts. See Iskander v. Columbia Cement Co., supra.
The courts in Daly, A. v. D., and Bambi recognized the extraordinary efforts of counsel and the length of time between retention and disposition. The amendments to the contingent fee schedules were factors due to the length of these cases. Taking into account the efforts of counsel, fees calculated under the schedule in effect at the time of retention would not reasonably compensate counsel for their efforts.
In contrast, these factors are not present in the instant case. First, the court has found that the efforts of counsel were not remarkable. Second, the Andersons' case was settled within 14 *150 months. Even if the case is deemed to have commenced when the Andersons retained the Korn firm, it was over within 18 months. Third, the services rendered after the 1984 amendment are not so extraordinary or extensive as to support a fee increase.
Therefore, the court finds that this case is not truly exceptional. The counsel fee of $169,205.75 is reasonable compensation for services rendered under the circumstances. The Broder firm's application for a fee increase pursuant to R. 1:21-7(f) is denied.

V.

THE DIVISION OF FEES BETWEEN NEW JERSEY AND NEW YORK COUNSEL
The court finds the overall counsel fee to be $169,205.75. The Broder firm retained a counsel fee of $336,847.70. Therefore, the Broder firm shall remit to the Andersons the sum of $167,651.75. The Andersons are also due interest on this sum at 12% from the date of settlement until the date of this opinion. This money is to be divided between the Andersons as they see fit.
However, McCreedy is to be compensated for his services out of the Andersons' remittance. McCreedy will submit an affidavit of services and form of order for court approval within ten days.
The court is aware that the Broder firm has paid the Pantages firm for services rendered. The Pantages fee must come out of the Broder firm's fee. It was their decision to hire "local counsel." Certainly, the Andersons should not bear this expense.
The court rejects the Korn firm's claim that they are entitled to 50% of the overall counsel fee. The Korn firm represented the Andersons for only three months. After reviewing their affidavit of services, the court finds that the Korn *151 firm's background work did contribute to the ultimate resolution of this matter. They are entitled to be compensated for their services in quantum meruit. Buckelew v. Grossbard, supra, 189 N.J. Super. at 587. The Korn firm's affidavit reflects that they spent approximately 120 hours on this case. The court finds that $125 an hour is a reasonable fee under the circumstances. Therefore, the Broder firm is to pay the sum of $15,000 to the Korn firm for services rendered.
Leib will submit a form of order consistent with this opinion within ten days. In addition, Leib will submit a copy of this opinion and subsequent orders to the Administrative Office of the Courts.
NOTES
[1] It should be noted that the affidavit of services submitted by the Broder firm reflects that reviewing efforts were being performed by their firm at the same time.