197 N.J. Super. 169 (1984)
484 A.2d 353
NIVEEN ISKANDER, AN INFANT BY HER GUARDIAN AD LITEM, NAWAL ISKANDER AND NAWAL ISKANDER, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
COLUMBIA CEMENT CO., INC., A CORPORATION, SAMUEL ISKANDER AND YOUSSEF ISKANDER, DEFENDANTS, AND PALISADES PARK LUMBER AND SUPPLY CO., INC., DEFENDANT-THIRD-PARTY PLAINTIFF,
v.
GARDEN STATE LUMBER PRODUCTS, THIRD-PARTY DEFENDANT, AND BRESLIN AND BRESLIN, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 24, 1984.
Decided November 19, 1984.
*172 Before Judges MATTHEWS and COHEN.
Kalb, Friedman and Siegelbaum, attorneys for appellant (Steven D. Fleissig on the brief).
Breslin & Breslin, attorneys for defendant-respondent (E. Carter Corriston of counsel and Brian T. Campion on the brief).
PER CURIAM.
Plaintiff's personal injury action on behalf of her infant daughter was settled for a total of $913,000. Her attorney had been retained under a contingent fee agreement which included a sliding scale of percentages to calculate the fee and a reference to the attorney's right to apply under R. 1:21-7(f) for a higher fee. At the time of the settlement, plaintiff's attorney told her he intended to make such an application. When he did so, plaintiff opposed it with independent counsel. The Assignment Judge granted the entire increase sought by the attorney. His opinion is reported at 192 N.J. Super. 114 (Law Div. 1983).
We affirm. We do so because we are satisfied there was ample evidence before the trial court that the added fee was justified by factors peculiar to the case itself. They include its unusual legal and factual complexity, the extended period of time necessary for its disposition, the unusual skill with which counsel handled it, the fact that settlement took place after completion of 18 days of jury trial and just before summations, the upward revisions made by the Supreme Court *173 to the rule setting percentage fees after the retainer was signed, and the excellent result achieved by counsel for the infant and her mother. See RPC 1.5, formerly DR 2-106. We believe it necessary, however, to discuss some of the other considerations mentioned in the published trial court opinion.
We agree with the trial court that R. 1:21-7(c)(6), as it existed at the times of the retainer agreement and of the hearing below, should not limit the counsel fee in this case. That rule limited to 25% the attorney's fee on the first $50,000 of any recovery for an infant or incompetent if "the matter is settled without trial." A matter that is settled after 18 days of trial is not fairly within the scope of a rule that focuses, as this one does, on settlements made before counsel invests substantial time and effort in trial.
We also agree with the trial court that, in the circumstances of this case, $88,000 in "pre-settlement interest" should be subject to the attorney's fee. The interest was earned as a result of the early tender by a defendant of its $300,000 policy limits, the agreed payment of the fund into the joint custody of counsel for plaintiff and of that defendant, and the sound management of the fund by those counsel for an extended period of time. The resulting earnings are unlike prejudgment interest, which must be excluded from fee calculations, because they were the product of agreement and stewardship in which counsel played a creative and responsible role. In correctly deciding this issue, the trial court discussed the includibility in fee calculations of post-judgment interest. As we understand the case, that was not an issue before the court and thus we express no view on it.
We caution against an overbroad reading of the trial court's opinion. It should not be read to say that inflationary decline in the value of the dollar alone will justify an increased attorney's fee. The rise in verdicts and settlements in response to inflation presumably takes care of that. The trial judge believed there was a problem in the operation of the rule, *174 namely, decline in the dollar's value during the period between retainer and settlement. He conceived that applying the decreasing percentage scale to a greater number of dollars of lesser individual worth will produce a fee that is a smaller percentage of the plaintiff's recovery. He cited the similar tax problem of "bracket creep."
If the problem exists, it exists in all cases and for all attorneys with contingent fee agreements. It can be solved only by the Supreme Court in its rule-making capacity. Unless an especially long period of time has elapsed between retainer and outcome, such as the eight years involved here, "bracket creep" should not form grounds for relief under R. 1:21-7(f). The purpose of that provision is to afford relief in particular cases whose individual characteristics merit special treatment. American Trial Lawyers Assoc. v. New Jersey Supreme Court, 126 N.J. Super. 577, 583 (App.Div. 1974), aff'd 66 N.J. 258 (1974). Dissatisfaction with the statewide effect of the rule's percentage schedule is ordinarily no basis for relief by motion under R. 1:21-7(f).
Also, the trial court's opinion should not be read to say that upward changes in the fee schedule after a retainer is executed will invariably create the right to a higher fee. We start, after all, with a contract between attorney and client setting a formula for calculating the attorney's fee. The client may not disavow the formula after settlement on the thesis that settlement was easier than average or quicker than anticipated. A higher fee may be awarded on an attorney's motion only if the attorney can satisfy the court that the fee contracted for would not be "a reasonable fee in the light of all the circumstances." R. 1:21-7(f). Post-retainer rule changes may be taken into consideration along with all other relevant facts. In a case like this one, in which a higher fee schedule existed for seven of the case's eight years, rule changes may be a matter of some weight in the court's thinking. Changes in fee schedules *175 should not, however, automatically supersede existing retainer agreements.
Affirmed.