486 A.2d 966

Anthony R. OLIASTRO, Rocco Cusato and Nick A. Frisk, Jr., Esq.

v.

BOROUGH OF ELLWOOD CITY.

Appeal of Nick A. FRISK, Jr., Esq.

Superior Court of Pennsylvania.

Argued July 12, 1984.

Filed Dec. 31, 1984.

Reargument Denied Feb. 7, 1985.

182

184

Scott L. Melton, Conway, for appellants.

Edward Leymarie, Jr., Ellwood City, for appellee.

Before ROWLEY, TAMILIA and HESTER, JJ.

HESTER, Judge:

In 1961, Anthony Oliastro and Rocco Cusato owned several earth-moving vehicles used in their excavating business in Beaver County. The vehicles were parked across from Oliastro's residence on Summit Avenue which prompted the filing of frequent complaints by neighbors with the Borough of Ellwood City (hereinafter "appellee").

Although the vehicles were parked legally, appellee encouraged Oliastro and Cusato to move them to a large tract of land it owned and used primarily for a refuse dump. The two men agreed, and they executed a yearly lease for a monthly rental of $35.00.

Appellee also promised to transfer title to a portion of the property to both men providing they renovated a house on the premises and performed some excavation. Following the expenditure of $16,000.00 in labor and materials, the house was made habitable, and Oliastro moved in. Approximately $20,000.00 in labor and materials was expended to move earth, garbage and a strip mine spoil pile in order that parking space would be available for said vehicles. Appellee permitted the men to erect a large garage for their trucks and a tool shed for smaller equipment at a cost of $6,000.00. Oliastro and Cusato completed other projects for the benefit of appellee.[1]

---

1. They regraded and partially paved a roadway through the property over which borough vehicles travelled daily to dump refuse. Oliastro kept watch over appellee's limestone and electrical equipment stored

In 1973, the Pennsylvania Department of Transportation offered to purchase a portion of the property in question for the construction of a highway. In the event the Department purchased any portion of the property to be conveyed to Oliastro and Cusato, appellee agreed to compensate them for their expenses and effort.

In 1973, Oliastro and Cusato retained appellant, Nick A. Frisk, Jr., Esq., to represent them in the condemnation proceeding. On March 19, 1974, appellant and Oliastro met with borough council, Ellwood City's mayor, and the borough solicitor and manager. Prior to the meeting, the Department of Transportation had offered $11,000.00, to be divided between appellee and the tenants, as a condemnation settlement.

■ As a result of the meeting, borough council voted to authorize appellant to negotiate in an effort to obtain a higher offer for appellee while he was negotiating in behalf of the tenants. The offer of $11,000.00 was reduced to a pro tanto payment, the draft was endorsed by the tenants and the entire amount given to appellee. A second pro tanto payment in the amount of $20,760.00 was divided accordingly: $7,000.00 to appellee, $4,000.00 to Oliastro and Cusato each and $5,760.00 to appellant in attorney fees calculated on the amount received by tenants. The first pro tanto payment was issued in December, 1974; the second was issued in December, 1975.[2]

on the property. They moved refuse dumped by private industries from the front to the rear of the property and covered the debris with dirt to prevent rodent infestation. When the men notified appellee of their expense in performing these jobs, the borough manager assured them that they would gain title to a portion of the real estate. Finally, they constructed a new road for access by appellee. Appellee eventually set aside two and one-half acres, which included the house, for sale; however, the sale did not occur.

2. Appellant asserts that the meeting with council on March 19, 1974 also resulted in an agreement whereby appellee would acquire the first $18,000.00 of condemnation funds received from the state while Oliastro and Cusato would acquire any amount in excess of $18,000.00. Appellant's fee was to be calculated on 40 percent of the funds in excess of $18,000.00. Consequently, the entire first pro tanto payment and $7,000.00 of the second payment of $20,760.00 was

Following the disbursement of the second pro tanto payment, appellant notified the borough solicitor and borough manager that appellee had received its full compensation, and any additional sums received would be endorsed to the tenants. Appellant's letter was based upon his understanding of an agreement which he entered into with appellee and the tenants.

Thereafter, appellant filed a Petition for the appointment of a Board of Viewers in the Common Pleas Court of Beaver County, naming appellee, Oliastro and Cusato as claimants. On June 22, 1978, the Board of Viewers conducted a hearing and a final award was issued in favor of appellee in the amount of $42,500.00. There was no award in favor of Oliastro and Cusato.

The Department of Transportation appealed, and the matter was eventually settled for $39,000.00. Adding detention charges to the settlement figure, and reducing the aggregate by the two pro tanto payments totaling $31,760.00, the Commonwealth issued its check payable to the three claimants in the amount of $11,220.40. In June, 1979, appellant mailed the check for $11,220.40 to appellee and requested that it be endorsed to Oliastro and Cusato, whom, in appellant's opinion, were entitled to everything in excess of $18,000.00.

Appellee refused to endorse the check for $11,220.40; consequently, Oliastro, Cusato and appellant instituted suit for compensatory and punitive damages in the Court of Common Pleas of Beaver County.

On April 22, 1980, pursuant to preliminary objections filed by appellee, a demurrer was sustained as to all assumpsit counts while preliminary objections to three counts of fraud and deceit were dismissed. Shortly thereafter, appellant's and the tenants' Motion for Leave to Amend the Complaint was granted. Appellant and the tenants thereafter amend-

endorsed to appellee. Evidence of this agreement was inadmissible; the agreement was void as it was not adopted by borough resolution, a formality mandated by the Borough Code.

ed their complaint to include two counts of unjust enrichment.

Following a non-jury equity trial on November 9, 1981, a verdict was returned for appellee in the amount of $11,220.40. Only appellant filed exceptions. When they were denied by Order dated June 29, 1982, this appeal followed.

We hold that appellee was unjustly enriched in its receipt of $11,220.40; consequently, we reverse.

Appellant asserts that an agreement was reached on March 19, 1974 when he, Oliastro and Cusato met with appellee's councilmen, solicitor and treasurer. The alleged agreement authorized appellant to represent appellee in the condemnation proceedings. It further provided that the first $18,000.00 awarded would be paid to appellee while all funds in excess thereof would be payable to Oliastro and Cusato. Appellant was to calculate his contingent fee only on funds paid to the tenants; appellee was not to pay any portion of appellant's fee.

The lower court ruled that no contract existed. In so doing, it cited § 1116 of the Borough Code. 53 P.S. § 46116. That section provides that counsel, other than the borough solicitor, may be retained only by ratification of borough council. Since there was no ordinance, resolution or written agreement to confirm appellant's representation of appellee, no agreement existed. We agree with the lower court's ruling that no contract existed; however, we believe it erred in ruling that appellee was not unjustly enriched.

In *Furia v. City of Philadelphia*, 180 Pa.Super. 50, 118 A.2d 236 (1955), a Philadelphia police officer missed 24 days of work due to injuries sustained in an automobile accident. During his absence, the City of Philadelphia paid his full wages which amounted to $263.75. The police officer retained an attorney to represent him in a claim against the tortfeasor. The city notified the attorney of its right to subrogation in the amount of $263.75. The attorney ac-

knowledged the notice and instructed the city of his usual fee. The city did not respond.

The officer's claim was settled with the tortfeasor's insurance carrier in the amount of $850.00. When the city refused to pay one-third of its claim for $263.75 to the police officer's attorney, a declaratory judgment action was instituted by said attorney.

The attorney in *Furia* did not have an express contract to undertake legal services for the city of Philadelphia. The *Furia* court noted that had the attorney performed the work *for the city*, without either an implied or express contract, he would not be entitled to compensation. However, the attorney acted for the police officer, and the fund created by settlement was obtained solely for his client. It was only upon settlement on behalf of his client that the city's right to subrogation arose.

The *Furia* court was guided by equitable principles in awarding attorney fees from the subrogation fund. Had it ruled to the contrary, the *Furia* court was particularly troubled by the possibility of the officer acquiring less than the amount of the city's subrogation claim from the tortfeasor's carrier. In that event, the city would acquire all of the funds in the settlement of its claim, while the officer paid the entire attorney's fee.

■ In the case sub judice, the final payment of $11,220.40 was acquired following the payment of $18,000.00 to appellee and $13,760.00 to the tenants. We recognize that evidence of an agreement between appellee and appellant was either insufficient or inadmissible. Furthermore, as acknowledged by dictum in *Furia*, appellant could not be compensated for representing appellee without an agreement. There is evidence, however, that once $18,000.00 was paid to appellee, appellant was no longer representing appellee.

■ A letter dated October 25, 1974, written by appellee's solicitor and addressed to appellant, says in pertinent part:

> Pursuant to our understanding, we enclose herewith application for Pro-Tanto payment by Pen Dot [sic] in the amount of $11,000.00. This amount will be handed over to the Borough of Ellwood City, properly endorsed as soon as you receive it. The final settlement from Penn-Dot will be distributed in accordance with our understanding at the 18–figure.

This letter concerns the first pro tanto payment of $11,-000.00; more significantly, it acknowledges appellee's understanding that it would receive no more than $18,-000.00. It follows, therefore, that following its receipt of the entire first pro tanto payment and $7,000.00 from the second pro tanto payment, appellee did not consider appellant to be representing the borough. The settlement for $11,220.40, the amount in dispute, was created by appellant in his representation of Oliastro and Cusato.[3]

■■■ As in *Furia*, appellee must pay reasonable attorney fees on funds procured for its benefit through the efforts of the tenants' attorney. In this case, attorney fees will be calculated on the full $11,222.40. Despite the check being made payable to all three claimants, Oliastro and Cusato will not participate in the final settlement due to the fact that the lower court so ruled, and they have not appealed.

The lower court cites § 41 of the Restatement of the Law of Restitution as basis for its opinion that appellant is not entitled to compensation, because appellee did not know that appellant pursued the tenants' claim in the condemnation proceedings following the second pro tanto payment. Section 41 also provides that should the recipient of the services have reason to know that services were being

---

3. This is so despite the fact that the Board of Viewers had determined earlier that only appellee was entitled to compensation. Final settlement was entered into by all three claimants and the Commonwealth. Furthermore, the check for $11,220.40 was made payable to appellee, Oliastro and Cusato. The three claimants' names remained on the pleadings throughout the condemnation proceedings following appellee's receipt of $18,000.00.

performed, but did not expect to pay therefor, no compensation is due.

■ The lower court incorrectly applied § 41. Section 41 would apply only if appellant had performed the services for appellee which reaped the final payment of $11,220.40. As noted, final payment was the result of appellant's sole representation of the tenants; appellee had already received $18,000.00, which it acknowledged in writing as full compensation for its interest.

The lower court also cites *Restatement of Contracts, 2nd,* Sections 197, 198 and 199, as authority for rejecting appellant's claim for compensation. These sections deny restitution to a party who engaged in serious misconduct and to a party who performs on a promise unenforceable on grounds of public policy.

■ According to the lower court, appellant engaged in misconduct by failing to advise appellee of the condemnation proceedings following the second pro tanto payment,[4] and by representing multiple clients in contravention of Canon $5, EC5–1 of the Canons of Professional Responsibility. The promise allegedly contrary to public policy was the authorization for representation given by appellee without formal vote and resolution.

The lower court fails to recognize that final payment of $11,220.40, and the efforts expended to acquire that payment, are the only disputed issues. Once appellee received $18,000.00, there was incontrovertible evidence that appellant represented only Oliastro and Cusato. Whether representation of multiple clients occurred prior to payment of $18,000.00 to appellee is not relevant.

■ Also, appellant was not performing on appellee's promise when attempting to reach final settlement. Therefore, it is contrary to fact to find that appellant performed

4. At the time of the Board of Viewers hearing, appellant was appellee's solicitor. That fact, in conjunction with the Board of Viewer's award being given to appellee only, encouraged the Court to find misconduct for appellant's failure to notify appellee of the proceeding and the award in its favor alone.

on a promise unenforceable on public policy. Appellee had made no promise to compensate appellant. Following the second pro tanto payment, appellant was seeking an additional condemnation award only for Oliastro and Cusato.

■ Having ruled appellant entitled to compensation on the payment to appellee of $11,220.40, the amount of a reasonable attorney's fee is a remaining issue. See *Furia, supra.* Under his agreement with Oliastro and Cusato, appellant was to receive a contingent fee of 40 percent. A Beaver County attorney confirmed that percentage as reasonable and customary. Furthermore, appellee contests appellant's receipt of any compensation; it does not dispute the reasonableness of the percentage used to compute the contingent fee. Therefore, in light of this evidence and the holding in *Furia,* we reverse and hold appellant entitled to 40 percent of $11,220.40, or $4,488.16.

Order reversed. Appellee directed to pay appellant the sum of $4,488.16, plus legal interest and costs.

ROWLEY, J., filed a dissenting statement.

ROWLEY, Judge, dissenting:

I respectfully dissent. I would affirm on the opinion of the trial court.