198 N.J. Super. 14 (1985)
486 A.2d 342
JOAN KINGMAN, GUARDIAN AD LITEM FOR SHARON CASH, PLAINTIFF-RESPONDENT,
v.
BRIAN J. FINNERTY, THE PEMBERTON NORTHEND BAR, INC., T/A PAUL'S NORTHEND BAR, ET AL., DEFENDANTS. IN THE APPLICATION OF DENIS J. CORBETT, ESQ. FOR FEES PURSUANT TO R. 1:21-7(F), APPLICANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 18, 1984.
Decided January 9, 1985.
*15 Before Judges MICHELS, PETRELLA and BAIME.
Denis J. Corbett, appellant, pro se.
John L. Woodland, Jr., attorney for respondent.
PER CURIAM.
The order of the Law Division awarding applicant Denis J. Corbett, Esq. an additional counsel fee of $2,587.73, for *16 a total contingent fee of $60,175.46 is affirmed substantially for the reasons expressed by Judge Blake in his letter opinion of February 16, 1983. We are entirely satisfied from our review of the record in light of the arguments presented that the trial court properly denied Corbett's application to base the contingent fee upon the settlement's present value to plaintiff Joan Kingman, guardian ad litem for Sharon Cash, and instead based the fee award on the cost of the settlement to the insurance company. This decision is consistent with the trial court decisions in Landgraf v. Glasser, 186 N.J. Super. 381 (Law Div. 1982); Tobias v. Autore, 182 N.J. Super. 328 (Law Div. 1982); Pacillo v. Harris Mfg. Co., 182 N.J. Super. 322 (Law Div. 1981); and Merendino v. FMC Corp., 181 N.J. Super. 503 (Law Div. 1981). See also Bambi v. Dr. O., et al., 114 N.J.L.J. Index page 592 (Law Div. 1984); Keller v. Dougherty, et al., 197 N.J. Super. 406, 114 N.J.L.J. Index page 630 (Law Div. 1984). Moreover, the method utilized by the trial court to calculate the fee award tracks the new rule dealing with structured settlements, R. 1:21-7(h), adopted by the Supreme Court effective January 16, 1984 while this appeal was pending.
We are also satisfied that the amended contingent fee schedule contained in R. 1:21-7(c) which also became effective on January 16, 1984 when the new paragraph (h) of that rule was promulgated should not be applied in this case. Corbett, apparently anticipating the Supreme Court's approval of the change in the contingent fee schedule argues that this schedule should now be applied to this appeal, relying upon Gibbons v. Gibbons, 86 N.J. 515 (1981) and McMullen v. Conforti & Eisele, 67 N.J. 416 (1975).
In McMullen the Supreme Court held that "[t]here is no question but that [R. 1:21-7] was intended to be retrospective in effect since it provides (in paragraph (e)) that an attorney shall not `contract for, charge or collect' (emphasis added) a contingent fee in excess of the limits fixed by the rule." 67 N.J. at *17 418. Applying the rule retroactively in McMullen resulted in a reduced fee for the attorneys from the contracted for fee. Applying the rule retroactively to Corbett's claim would increase his fee. We see a dramatic difference in the two results and are of the view that the increased maximum for contingent fees under the amendment to paragraph (c) should not be applied to this or any other case filed prior to January 16, 1984. R. 1:21-7(c) is a limiting rule. It sets a maximum amount attorneys may receive for their services under a contingency fee arrangement. For the attorneys in McMullen to have "collected" more than the maximum amount fixed by the rule would have been a violation of the rule as written. For Corbett to "collect" a fee less than the maximum amount violates no rule.
In holding R. 1:21-7 to be retroactive the Court stated:
Finally, we find no merit to plaintiffs' contention that the rule impairs the obligation of contingent fee contracts made and partly performed prior to January 31, 1972. Apart from the fact that, as noted above, it has long been recognized that attorneys' fee arrangements are subject to judicial scrutiny, "every contract is made subject to the implied condition that its fulfillment may be frustrated by a proper exercise of the police power." Veix v. Seneca B. & L. Ass'n, 126 N.J.L. 314, 320 (E. & A. 1940); see also Marcus Brown Holding Co. v. Feldman, 256 U.S. 170, 198, 41 S.Ct. 465 [466], 65 L.Ed. 877 (1921). The stated rule is fully applicable to fee contracts between an attorney and his client. Calhoun v. Massie, 253 U.S. 170, 40 S.Ct. 474, 476, 64 L.Ed. 843 (1920).
Moreover, the lack of substance in the contention that the retroactive application of R. 1:21-7 impairs the obligation of contract is underscored by the fact that any attorney who believes that the rule operates unfairly as to him may proceed, under R. 1:21-7(f), to seek court approval of a fee in an amount greater than that permitted by R. 1:21-7(c). [McMullen v. Conforti & Eisele, 67 N.J. at 418-419 (quoting Amer. Trial Lawyers Assoc. v. N.J.Supreme Ct., 126 N.J. Super. 577, 593 (App.Div. 1974)].
The obvious purpose of R. 1:21-7 and of applying it retroactively is to protect the public from excessive legal fees. While the new rule allows for increased fees and implicit in this allowance is the fairness of the increased fees, the fact remains that prior to January 16, 1984 the public entered contingency fee agreements on the basis of the lower rates provides by the former *18 paragraph (c). To apply the amendment retroactively in all cases would be to force many of these litigants to pay fees higher than the fees they obligated themselves to pay and anticipated paying.
In Gibbons v. Gibbons, 86 N.J. 515 the Supreme Court listed the steps utilized in deciding whether a statute is subject to retroactive application. The final inquiry which must be made is:
... will retroactive application result in "manifest injustice" to a party adversely affected by such an application of the statute? The essence of this inquiry is whether the affected party relied, to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and whether the consequences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively. [Id. at 523-524].
The same final inquiry must be made in determining whether to apply a court rule retroactively. In many cases filed before January 16, 1984 the effected party, the public, may have relied to their prejudice on former R. 1:21-7(c). In any event, to now require members of the public to pay attorney's fees in excess of those contracted for, merely because of a fortuitous change in the rule, would have consequences which can be labeled no less than "deleterious and irrevocable" to both the legal profession and members of the public who see their net recovery cut by increased fees. Because all fees limited by paragraph (c) must be in writing, signed by both the attorney and the client, R. 1:21-7(g), our ruling would apply to all such fees regardless of whether actually in writing or discussed prior to January 16, 1984. Moreover, members of the general public look to the courts for protection in the area of legal fees and costs and would not expect subsequently promulgated court rules to be applied in such a manner as to increase, above their original obligation, the costs they must incur to pursue their legal claims. While the new fee schedule is undoubtedly fair to many new cases, its retroactive application can hardly be viewed as fair to or in the interest of the public at large. To the extent that the Law Division decision in A. v. D., 196 *19 N.J. Super. 340, 345-346 (Law Div. 1984) could be construed as applying the new fee schedule retroactively, we disapprove of its holding. See Iskander v. Columbia Cement Co., Inc., 197 N.J. Super. 169 at 174 (App.Div. 1984); Delle Fave v. Sanitation Equipment Corp., 197 N.J. Super. 555, 563 (Law Div. 1984).
Accordingly, the counsel fee order under review is affirmed.