201 N.J. Super. 544 (1985)
493 A.2d 611
LORRAINE FAY WURTZEL, EXECUTRIX OF THE ESTATE OF ERWIN WURTZEL, ON BEHALF OF THE ESTATE OF ERWIN WURTZEL AND ON BEHALF OF THE HEIRS-AT-LAW OF ERWIN WURTZEL, PLAINTIFF-APPELLANT,
v.
ROLAND WERRES, M.D. AND SANJEEV SAKSENA, M.D., DEFENDANTS.
IN THE APPLICATION OF MEDVIN & ELBERG, ESQS., FOR FEES PURSUANT TO R. 1:21-7(f), APPLICANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 16, 1985.
Decided May 31, 1985.
*545 Before Judges MICHELS, PETRELLA and BAIME.
Kalb, Friedman and Siegelbaum, attorneys for appellant (Steven D. Fleissig, of counsel and on the brief).
*546 Robinson, Wayne, Levin, Riccio & La Sala, attorneys for respondents (Joseph P. La Sala, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Lorraine Fay Wurtzel, Executrix of the Estate of Erwin Wurtzel, appeals from an order of the Law Division that awarded her attorneys, applicants Medvin & Elberg, an increased attorney's fee in excess of the contingent fee provided for in their retainer agreement and allowed by R. 1:21-7(c) pursuant to the provisions of R. 1:21-7(f). Plaintiff contends that the trial court mistakenly exercised its discretion in awarding the increased fee in that the fee provided by the retainer agreement was adequate and there was no evidence that the work performed by Medvin & Elberg was unusually difficult, time consuming or unique for a medical malpractice death case. Plaintiff also charges that her attorneys did not keep time records which would support an increase in the fee provided by the retainer agreement and that they concealed from her their "intent to seek a higher fee until after she authorized the settlement."
The medical malpractice action which formed the basis for the attorney's fee arose out of the death of plaintiff's husband, Erwin Wurtzel (Wurtzel). On January 16, 1982 Wurtzel was admitted to Newark Beth Israel Medical Center for a cardiac catheterization and cardiac electrophysiological studies. Defendant Roland Werres, M.D. was the attending physician and defendant Sanjeev Saksena, M.D. performed the electrophysiological studies. As part of the electrophysiological studies Dr. Saksena inserted a catheter into the vein under Wurtzel's right collar bone. As intended, the catheter remained in place for several days. Plaintiff based her malpractice complaint on the theory that Wurtzel developed an infection from this catheter that went unrecognized, undiagnosed and untreated by both doctors and that this failure by the doctors caused an infected or mycotic [any disease caused by the presence of fungi] *547 abdominal aortic aneurysm which required an emergency resection [removal of a segment] on February 18, 1982. Wurtzel died during this emergency surgery.
In December 1982 suit was instituted. According to the affidavit of Alan Y. Medvin, Esq. (Medvin), the partner in the firm of Medvin & Elberg, who was "solely responsible for handling this litigation from its inception," he, among other things, searched out and retained highly qualified medical experts, surgeons who had never acted as experts in a medical malpractice case; retained an economist to act as an economic expert for the measure of damages; reviewed in detail the medical expert's report; prepared and filed various motions to compel the deposition of defendant Werres, to compel production of defendants' experts' reports and to bar expert testimony on behalf of defendants for failure to supply expert reports as ordered by the court; prepared for, and attended plaintiff's, defendants' and the experts' depositions; received Saksena's expert's report concerning Wurtzel's life expectancy and had his own expert evaluate same; attended pretrial and settlement conferences; received and reviewed Werres' medical expert's report which raised for the first time the proximate cause defense that the source of the infection was the intravenous line which had been inserted in Wurtzel's left hand; located an outstanding expert in the area of infectious diseases to refute this defense; reviewed and indexed the deposition transcripts and defendants' interrogatory answers; designed graphic exhibits; prepared plaintiff's experts for trial; met with plaintiff and reviewed all aspects of the upcoming trial; drafted proposed jury instructions, voir dire questions and proposed verdict forms; attended a settlement conference; read in detail five medical articles totaling 41 pages and read chapters in medical treatises concerning applicable topics; spent 6 days preparing his opening statement; and finally reached settlement on the eve of trial in May 1984.
The suit was settled for $337,500. Disbursements in the case totaled $6,395.75, resulting in a net recovery for purposes of fee *548 computation of $331,104.25. The retainer agreement provided for a contingent fee to be computed on the basis of the percentages set forth in R. 1:21-7(c). Under that agreement and in accordance with the rule, the maximum fee on the net recovery of $331,104.25 was $67,557.09.[1] The agreement, however, also reserved to the attorneys "the right, pursuant to R. 1:21-7(f) to make further application to the Assignment Judge on written notice to the client for an additional fee should the attorney, at the conclusion of the matter, deem the fee provided for by this arrangement to be inadequate." Pursuant to that provision and R. 1:21-7(f) Medvin & Elberg applied for an award of one-third of the net recovery. This application was supported by the affidavits of Medvin and his partner Philip Elberg, Esq. Plaintiff retained counsel to represent her and filed affidavits in opposition to the request for an increased attorney's fee. The trial court, following argument, granted the application and awarded Medvin & Elberg an increased fee of $97,500.00. Although the trial court found nothing unusual about the case from a legal standpoint, it awarded the increased fee, reasoning in part, that:
I'm satisfied that although this was not an unusual malpractice case from a legal point of view, that factually [it] was one which required an intense amount of work. Mr. Medvin has vividly painted the pictures that would have framed the issues had this case gone to trial and the Court has taken notice of the fact that it has not gone to trial.
Therefore, the work of a lawyer is not only in a courtroom. Indeed, case preparation is the one most important aspect of the trial lawyer's work. Mr. Medvin obviously knowing that the factual and medical issue was going to be complicated and knowing of the fact that the credibility of experts are affected by the ability of counsel on cross examination to elicit that they are in court, day in and day out testifying on behalf of a party undertook and did locate two experts who were new to the field of testimony and therefore would presumably receive much more credibility on the part of the plaintiff. Obviously, the defense counsel who the Court recognizes is able and competent defense counsel were able to arrive at that conclusion and presumably represented to *549 their clients that a substantial settlement be offered. There was also a very difficult damage question as described by Mr. Medvin. Again, this is nothing unusual in the sense of legal issues, but it was the factual preparation and the preparation of the experts that marks this case as being one which was handled in a fashion other than the so-called routine medical malpractice cases.
This appeal followed.
The contingent fees that attorneys may contract for, charge or collect are set by court rule. However, the outer limits established for contingent fees are not absolute. R. 1:21-7(f) provides that:
(f) If at the conclusion of a matter an attorney considers the fee permitted by paragraph (c) to be inadequate, an application on written notice to the client may be made to the Assignment Judge for the hearing and determining of a reasonable fee in light of all the circumstances. A copy of any such application and of all papers filed in support of or in opposition thereto, together with a copy of the court order fixing the fee shall be filed with the Administrative Office of the Courts. This rule shall not preclude the exercise of a client's existing right to a court review of the reasonableness of an attorney's fee.
Under paragraph (f) of the rule, the Assignment Judge, following a hearing upon application for an increased fee, may determine what is a "reasonable fee in light of all the circumstances." See Iskander v. Columbia Cement Co., Inc., 197 N.J. Super. 169, 174 (App.Div. 1984); Bolle v. Community Memorial Hospital, et al., 145 N.J. Super. 593, 595-596 (App.Div. 1976); Murphy v. Mooresville Mills, 132 N.J. Super. 197, 199 (App.Div. 1975), certif. den., 68 N.J. 156 (1975). In order to be entitled to an increased fee over and above that provided for by the retainer agreement and paragraph (c) the attorney must demonstrate that (1) the fee allowed under the rule is not reasonable compensation for the services actually rendered, and (2) the case presented problems which required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming.
Medvin argued that three aspects of this case made it unusually difficult and justified an increased fee. First he claimed that "[t]he standard of care itself was highly contested"; (2) the proximate cause defense asserted at the last minute "if believed by the jury would have given us essentially a case we couldn't win" which therefore required him to find an *550 expert whose testimony at deposition "basically blew that contention ... right out of the case" and would enable plaintiff to prove proximate cause; and (3) the life expectancy issue had to be prepared. This latter issue centered on the reports of defendants' experts which in essence provided that "based on Mr. Wurtzel's [original heart] condition even if treated, he would have had a very small chance of living past five years." As a result of these reports Medvin and his expert obtained the latest data with respect to Wurtzel's condition and prepared to prove he had a work life expectancy of 6.5 years. Medvin also faced the problem that Wurtzel's income had decreased from $70,000 in 1978 to $38,000 for the last full year he had lived.
There is plainly nothing unusual about this case which would justify awarding an attorney's fee above the fee provided for by both the retainer agreement and R. 1:21-7(c). While an increased fee is proper when the "factual and legal issues ... [are] difficult and complex, involving a variety of disparate contending parties," see Murphy v. Mooresville Mills, supra, 132 N.J. Super. at 199, no such showing was made in this case. The findings of the trial court that the factual preparation and the preparation of the experts justified the increased award is simply not supported by "adequate, substantial and credible evidence" in the record. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974). The record discloses that while Medvin obviously approached his task of representation with due diligence and effort, the case, considering it was a medical malpractice death case, neither posed "problems which required exceptional skills" nor resulted in "unusually time-consuming" work. Bolle v. Community Memorial Hospital, et al., supra, 145 N.J. Super. at 597 (Emphasis supplied).
Although some medical malpractice death cases may be less complicated than this case, it is not unusual for a plaintiff in any medical malpractice death case to be opposed by two or more doctors who raise a proximate cause issue and attack the life expectancy of the decedent. While the latter issue may have been somewhat more complex than in some cases because *551 of decedent's prior heart condition it does not rise to the level of justifying an increased fee. Moreover, both Medvin's and Elberg's failure to keep records of time actually spent in handling this case clearly militated against their ability to produce adequate, substantial and credible evidence for the trial court to evaluate and use to justify an increased fee. See Bolle v. Community Hospital, et al., supra, 145 N.J. Super. at 596. Cf. Buckelew v. Grossbard, 189 N.J. Super. 584, 588 (Law Div. 1983), aff'd o.b., 192 N.J. Super. 188 (App.Div. 1983).
Finally, the trial court was apparently concerned with awarding an "adequate" fee considering the fact that our Supreme Court had recently amended R. 1:21-7(c) to provide for increased contingency fees. The trial court obviously intended to provide what it believed to be an "adequate fee" for the due diligence and effort that Medvin put forth in obtaining what the trial court labeled "a remarkably good" settlement. To this end, the trial court recognized that the new schedule "reflects the philosophy by the Supreme Court that attorneys previously were not receiving adequate compensation under the old fee rule," and in awarding the increased fee stated, "I'm going to allow a fee which is somewhere between what Mr. Medvin would be entitled to under the old fee computation and that [which] would be allowed under the present rule." R. 1:21-7(f), however, limits the trial court's discretion to awarding "a reasonable fee in light of all the circumstances." Iskander v. Columbia Cement Co., Inc., supra, 197 N.J. Super. at 174; Bolle v. Community Memorial Hospital, et al., supra, 145 N.J. Super. at 596. This court interpreted the limitations of R. 1:21-7(f) to mean that while "[p]ost-retainer rule changes may be taken into consideration along with all other relevant facts.... [c]hanges in fee schedules should not ... automatically supersede existing retainer agreements." Iskander v. Columbia Cement Co., Inc., supra, 197 N.J. Super. at 174-175. See also Delle Fave v. Sanitation Equip. Corp., 197 N.J. Super. 555, 563 (Law Div. 1984). The mere fact that our Supreme Court modifies the fee schedule to provide for increased fees in *552 the future is insufficient by itself to justify a fee above that provided by a retainer agreement. There must be an independent showing that the increased fee sought is justified. Such an independent showing may include the fact that the "higher fee schedule existed for seven of the case's eight years," Iskander v. Columbia Cement Co., Inc., supra, 197 N.J. Super. at 174, or other "truly exceptional situations as where new law is established on appeal, Buckelew v. Grossbard, supra, or where a trial, appeal, and retrial are required, Harris v. Boland, 193 N.J. Super. 737 (Law Div. 1983)." Delle Fave v. Sanitation Equip. Corp., supra, 197 N.J. Super. at 563. (Emphasis supplied).
Here, Medvin was neither required to deal with problems calling for exceptional skill nor to expend unusual amounts of time that would not be encountered in any medical malpractice death case. Moreover, there was no showing that the original fee was not reasonable compensation for the services actually rendered. To hold otherwise would in effect approve what was in essence the trial court's partial retroactive application of the new fee schedule under R. 1:21-7(c). The new fee schedule is not retroactive and only where there is an independent showing that the fee under the former schedule is not "a reasonable fee in light of all the circumstances," R. 1:21-7(f), should the trial court increase an attorney's fee above that provided in the retainer agreement. See Kingman v. Finnerty, supra, 198 N.J. Super. at 18; Iskander v. Columbia Cement Co., Inc., supra, 197 N.J. Super. at 174-175. Such a showing was not made here.
In our view, this case was not a truly exceptional case. The record shows that the fee computed on the basis of the limitation contained in the retainer agreement and paragraph (c) was reasonable, and thus there was no warrant to increase it. In reaching this decision we deem it appropriate to repeat what was stated in Bolle v. Community Memorial Hospital, et al., supra, where we reversed an order increasing a contingent fee in a medical malpractice case:

*553 Nor do we in any way denigrate the value of the services performed by respondents, nor detract from the success which resulted from their efforts, but the record is devoid of any evidence from which we can conclude that:
(1) the fee of $33,629.55 allowed under the rule is not reasonable compensation for the services actually rendered;
(2) the case presented problems which required exceptional skills beyond that normally encountered in medical malpractice actions, or
(3) the case was unusually time-consuming, considering that it was a medical malpractice case.
All that is presented by the record is a successful prosecution of a medical malpractice claim involving the expenditure of time, efforts and expertise. This is required in any medical malpractice action.
The record before us does not demonstrate why the services rendered were exceptional and entitled respondents to an additional allowance. [145 N.J. Super. 596-597].
In view of our decision we need not reach or decide plaintiff's further contention that Medvin & Elberg's application should have been denied because of their concealment of their intent to apply for an increased fee when they obtained her consent to the settlement and the conflict of interest issue implicitly raised thereby.
Accordingly, the order allowing the increased fee is reversed.
NOTES
[1] The retainer agreement was executed on March 2, 1982, and therefore the contingent fee limits contained in R. 1:21-7(c), as effective prior to the January 16, 1984 amendment to the rule, applied here. See Kingman v. Finnerty, 198 N.J. Super. 14 (App.Div. 1985).