

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-29-1995

# Mitzel v. Westinghouse Elec. Corp.

Precedential or Non-Precedential:

Docket 94-5666

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Mitzel v. Westinghouse Elec. Corp." (1995). *1995 Decisions.* Paper 324.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/324

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 94-5666

KIRK MITZEL; JANET MITZEL, h/w

v.

WESTINGHOUSE ELECTRIC CORPORATION;
DRAVO CORPORATION; DICK CORPORATION;
CORTEC INDUSTRIES, INC., t/a, d/b/a INLAND BUILDINGS;
DAVY McKEE CORPORATION, t/a, d/b/a DAVY DRAVO;
DRAVO ENGINEERING COMPANIES, INC.;
CORTEC INDUSTRIES, INC., t/a, d/b/a SUMMIT BUILDINGS;
S.B. ACQUISITION COMPANY, t/a, d/b/a SUMMIT BUILDINGS

DICK CORPORATION; DRAVO CORPORATION
Third-Party Plaintiffs

v.

A.C. DELLOVADE, INC.;
DAVY McKEE CORPORATION, t/a, d/b/a DAVY DRAVO
Third-Party Defendants

Kirk Mitzel and Janet Mitzel, by and with
their Attorneys, A Dragon Associates,
Appellants

(Caption amended per the Clerk's 11/04/94 Order)


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 91-cv-05689)


Submitted Pursuant to Third Circuit LAR 34.1(a)
July 17, 1995

Before: SLOVITER, Chief Judge, SCIRICA, Circuit Judge,
and AMBROSE, District Judge[1]

---

[1]Hon. Donetta W. Ambrose, United States District Court for the
Western District of Pennsylvania, sitting by designation.


1

(Opinion Filed December 29, 1995 )

Arlin M. Adams
Schnader, Harrison, Segal & Lewis
Philadelphia, PA  19103

  Of Counsel:
        Kaethe B. Schumacher
        Schnader, Harrison, Segal & Lewis
        Philadelphia, PA  19103

        Albert Dragon
        Litvin, Blumber, Matusow & Young
        Philadelphia, PA  19107

            Attorneys for Appellants

OPINION OF THE COURT

SLOVITER, <u>Chief</u> <u>Judge</u>.

A Pennsylvania law firm, A Dragon Associates, and its clients, Kirk and Janet Mitzel, challenge the district court's application of the New Jersey State Court Contingency Fee Rule to a two-million-dollar settlement received by the Mitzels in a case Dragon filed for them in federal court in New Jersey. They argue that the district court erred in applying New Jersey rather than Pennsylvania law, and, in the alternative, that even if the New Jersey rule is applicable, Dragon is entitled to an increased fee under the terms of the rule because of the extraordinary time and effort it devoted to this case. We have jurisdiction under 28 U.S.C. § 1291. As none of the defendants have filed briefs, this matter is before us on appellants' brief only. Although the

2

appeal was filed on behalf of both Dragon and the Mitzels, we will treat only Dragon as the appellant.

I.

Kirk Mitzel was severely injured at a construction site in New Jersey when a steel beam on which he was working collapsed and fell 26 feet to the ground. Mitzel and his wife, Janet, were Pennsylvania residents at the time and retained Dragon to pursue worker's compensation and personal injury claims on their behalf. On July 26, 1990, the Mitzels signed a contingency fee agreement with Dragon in which the law firm agreed to represent them in return for 40% of any net recovery. At some point after signing this agreement, but before the complaint was filed, the Mitzels moved to North Dakota.

Dragon filed a complaint on December 30, 1991 in the District Court of New Jersey based on diversity jurisdiction, naming as defendants the primary and general contractors and the companies that designed the equipment and materials involved in the accident. Two attorneys from the firm were admitted pro hac vice to the District Court of New Jersey on May 18, 1992, pursuant to the district court's Local Rule 4(c).

Dragon asserts that during the following two-and-a-half years it invested over 5100 attorney hours in discovery, taking nineteen depositions, accumulating fifty-two expandable files of documents that are over twenty-two feet thick, arguing nearly twenty oral and written motions, reviewing hundreds of thousands of records, and consulting more than ten experts. It also claims

3

to have incurred considerable costs in travelling to Pittsburgh and Orlando to inspect documents.

Ultimately, in mid-1994 the defendants offered the Mitzels two million dollars, and Dragon volunteered to reduce its contingency fee from 40% to one-third in order to facilitate a settlement at this amount. The Mitzels agreed and, on July 25, 1994, filed a motion with the district court asking it to confirm the settlement and approve the one-third counsel fee in the amount of $648,403.28. The motion was referred to a magistrate judge, who instead recommended application of New Jersey Court Rule 1:21-7, and a counsel fee award of $435,181.47. The district court adopted the magistrate's recommendation and denied plaintiffs' motion for reconsideration. This appeal followed.

## II.

### A.

### Choice of Law

New Jersey Court Rule 1:21-7(c), which sets a schedule of maximum limits on the contingency fees that New Jersey attorneys can collect in tort litigation, provides:

> In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, . . . an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits:
> (1) 33_% on the first $250,000 recovered;
> (2) 25% on the next $250,000 recovered;
> (3) 20% on the next $500,000 recovered; and
> (4) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof . . . .

4

N.J. Court Rules, 1969, R. 1:21-7(c).  Paragraph (f), referred to in subparagraph (4) above, provides that "[i]f at the conclusion of a matter an attorney considers the fee permitted by paragraph (c) to be inadequate, an application on written notice to the client may be made to the Assignment Judge for the hearing and determining of a reasonable fee in light of all the circumstances."  R. 1:21-7(f).

The New Jersey district court has incorporated New Jersey's contingency fee rule into its local rules through Local Rule 4(c), which provides that "[a] lawyer admitted pro hac vice [to the federal court] is deemed to have agreed to take no fee in any tort case in excess of the New Jersey State Court Contingency Fee Rule (N.J. Court Rules, 1969, R. 1:21-7 as amended)."

Dragon argues that the district court erred in holding that New Jersey law rather than Pennsylvania law was applicable to its decision as to the amount of the contingency fee. Pennsylvania courts will uphold contingency fee agreements voluntarily entered into by the parties as long as they are not excessive and do not take "inequitable advantage of the payer." Richette v. Solomon, 187 A.2d 910, 919 (Pa. 1963).  A one-third contingency fee is not considered excessive, see id., and fees as high as 40% have been enforced by Pennsylvania courts.  See, e.g., Oliastro v. Borough of Ellwood City, 486 A.2d 966 (Pa. Super. Ct. 1984).  We apply plenary review to the district court's decision that New Jersey law is applicable here.  See

5

<u>Linan-Faye Constr. Co. v. Housing Auth. of Camden</u>, 49 F.3d 915, 919 (3d Cir. 1995).

Dragon presents the choice as one between Pennsylvania and New Jersey law, but it has apparently failed to consider the possibility that under the rules established by <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938), and its progeny, an attorney's fee issue affecting the allocation of funds between attorney and client presented in a diversity case is a matter of procedure governed by the law of the forum.

Generally, the right of a party or an attorney to recover attorney's fees from another party in a diversity action is a matter of substantive state law. See <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y.</u>, 421 U.S. 240, 259 n.31 (1975); <u>Abrams v. Lightolier Inc.</u>, 50 F.3d 1204, 1224 (3d Cir. 1995); <u>Montgomery Ward & Co. v. Pacific Indem. Co.</u>, 557 F.2d 51, 55-58 (3d Cir. 1977); <u>see</u> <u>also</u> 1A James W. Moore et al., Moore's Federal Practice ¶ O.309[1], at 3109-10 & n.46 (2d ed. 1995). In contrast, contingency fee agreements have been treated differently.

Contingency fee agreements apportion resources between plaintiffs and their counsel rather than plaintiffs and defendants, and therefore are collateral to the substantive merits of lawsuits in a way that awards of attorney's fees between parties are not. Furthermore, because of the imbalance of power that may exist between client and attorney, we have held that "contingency fee agreements are of special concern to the courts," <u>Dunn v. H.K. Porter Co.</u>, 602 F.2d 1105, 1108 (3d Cir.

6

1979), and fall within a court's "supervisory power over the members of its bar." Schlesinger v. Teitelbaum, 475 F.2d 137, 141 (3d Cir.), cert. denied, 414 U.S. 1111 (1973); see Dunn, 602 F.2d at 1110 n.8.

In Elder v. Metro. Freight Carriers, Inc., 543 F.2d 513 (3d Cir. 1976), this court was faced with an attorney's challenge to a federal court's limitation of his contingency fee under facts strikingly similar to those before us. Mrs. Elder, the widow of a New York resident killed in an accident in New Jersey, filed suit in New Jersey federal court seeking recovery under state tort law. Id. at 515. Both Mrs. Elder and her lawyer were residents of New York and they had signed a fee agreement there promising the attorney a one-third contingency fee. The lawyer was admitted pro hac vice to the New Jersey district court, where the suit proceeded. After some discovery, the parties agreed to a settlement. Id. The New York Surrogate Court approved distribution of the proceeds to the widow and children, and set the counsel fees pursuant to the one-third agreement, which would have led to a fee substantially in excess of the amount allowable under the New Jersey rule. A proposed order for payment of the one-third fee was then presented for approval to the district court. It declined to follow New York law and instead reduced the contingency fee under the formula set forth in New Jersey Court Rule 1:21-7, which was then, as now, incorporated into the district court's local rules. Id. at 515-16.

Counsel appealed to this court, and we affirmed the district court's decision. Id. at 517-19. We rejected an

argument, proffered by Dragon here as well, that we should apply the choice of law analysis of Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). We reasoned as follows: "Rules regulating contingent fees pertain to conduct of members of the bar, not to substantive law which determines the existence or parameters of a cause of action. Such rules are designed to promote the efficient disposition of litigation and enhance the public's confidence in the bar." Id. at 519. After noting that federal courts have the power to prescribe requirements for admissions before them and to discipline attorneys who have been admitted to practice before them, we stated that "such rules are of deep concern to the court which promulgated them," and concluded "[w]hen local rules of a federal district court are questioned, it is doubtful that the choice of law doctrines of the forum state come into play." Id.[2]

Under this reasoning, contingency fee agreements in diversity cases are to be treated as matters of procedure governed by federal law. We nonetheless proceed to analyze the district court's choice of law decision, a step we also took in Elder. We hold that, even assuming arguendo that the issue were a matter of state law under the Erie test, an application of New Jersey choice of law principles would mandate application of New

---

[2]We are not persuaded by Dragon's attempt to distinguish Elder on the ground that Elder involved a conflicting order from a New York Surrogate court. That fact was not relevant to, and certainly not dispositive of, this court's analysis of the conflict of law issue regarding the amount of the counsel fee.

8

Jersey law to the contingency fee agreement and thus lead to the same result.  See Elder, 543 F.2d at 519.

New Jersey law considers that matters relating to attorney's fees fall within the sphere of the state's "paramount concern with its courts," id. at 519.  The New Jersey view is clear and express:

It is a virtually axiomatic principle of conflicts of law that the procedural law of the forum applies even to causes of action governed by a different jurisdiction's substantive law. . . .  Court rules regulating attorney fees are not only clearly procedural but have also expressly been so declared.

Du-Wel Prods., Inc. v. U.S. Fire Ins. Co., 565 A.2d 1113, 1120 (N.J. Super. Ct. App. Div. 1989) (citations omitted), cert. denied, 583 A.2d 316 (N.J. 1990); see also State v. Otis Elevator Co., 95 A.2d 715, 717 (N.J. 1953) ("From the outset in New Jersey, following English precedents, the allowance of costs and counsel fees had been uniformly considered by the courts of this state to be a matter of procedure rather than of substantive law.").

Accordingly, we hold that the district court did not err in applying New Jersey Court Rule 1:21-7 or its local federal court counterpart to the Mitzels' contingent fee agreement.

B.

Reasonableness of the Fee Awarded

Dragon contends that even if the district court was bound to follow the New Jersey contingency fee rule, it failed to award "reasonable" compensation.  Dragon recognizes that we

9

review the district court's order in this respect only for an abuse of discretion.

Under Rule 1:21-7(f), a court may increase a contingency fee above the maximum limits in the rule on application by the attorney and written notice to the client. The language of the rule makes the polestar "a reasonable fee in light of all the circumstances." The New Jersey caselaw instructs that the attorney seeking an increased fee must demonstrate that

> (1) the fee allowed under the rule is not reasonable compensation for the services actually rendered, and (2) the case presented problems which required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming.

Wurtzel v. Werres, 493 A.2d 611, 614 (N.J. Super. Ct. App. Div.), cert. denied, 508 A.2d 223 (N.J. 1985); accord Anderson v. Conley, 501 A.2d 1057, 1066 (N.J. Super. Ct. Law Div. 1985).

In considering Dragon's application for a one-third contingency fee, the magistrate judge distinguished earlier New Jersey cases that granted fees above those established by Rule 1:21-17(c) on the ground that those adjustments were made at a time when the Rule imposed a ten percent cap on judgments over $250,000. See, e.g., Bambi v. Dr. O, 482 A.2d 536, 538 (N.J. Super. Ct. Law Div. 1984); Burd v. Hackensack Hosp. Ass'n, 477 A.2d 843, 844 (N.J. Super. Ct. Law Div. 1984); McNelis v. Cohen, 455 A.2d 1166, 1168 (N.J. Super. Ct. Law Div. 1982). The magistrate judge deemed those cases of little precedent, particularly in light of the Rule's 1984 amendment increasing the

10

percentages applicable and requiring counsel to make application for fees for recoveries above $1 million, R.1:21-7(c)(4).

Based on Dragon's application, the magistrate judge recommended that Dragon be awarded twenty percent on the amount recovered over and above $1 million, explaining "[a]lthough the instant case did not present complex or novel legal issues, counsel vigorously prosecuted [it] on behalf of his clients, and dedicat[ed] a great deal of time to the matter, and secured a very good result." Magistrate's Report and Recommendation at 4. Thus the fee recommended by the magistrate judge was calculated as: 33_% of the first $250,000 recovered, equaling $83,250; 25% of the next $250,000, equaling $62,500; 20% of the next $500,000, equaling $100,000; and 20% of the remainder of $947,157.10, equaling $189,431.42, leading to a total of $435,181.42.

Dragon contends that this award was not sufficient to render the total fee "reasonable" and that the fee should have been increased to one-third of the entire net recovery. It argues that the fee awarded is not reasonable compensation because it amounts to just $85 per attorney hour, out of which the firm must still pay overhead and operating expenses. Dragon points to the magistrate judge's finding that counsel "vigorously prosecuted [the] case," and to letters from defense counsel in this case praising Dragon as "extremely competent," App. at 295, and as having done an "excellent job in putting together a difficult case." App. at 172. Dragon argues that the case was "unusually time consuming" as the firm devoted over 5100 attorney hours in extensive investigation and discovery. Additionally, it

11

points to the facts that the Mitzels agree to the increase and that Rule 1:21-7, which has not been changed since 1984, fails to account for inflation. Substantially the same arguments were considered and rejected by the magistrate judge and the district court.

Taking at face value Dragon's assertions regarding time and effort expended on this case, we are not persuaded that the case was so unusual or time-consuming that we should disturb the district court's ruling. The cases cited by Dragon in which one-third fees were allowed under Rule 1:21-7(f) involved considerably more extensive litigation than was involved here. See Luchejko v. Membreno, 475 A.2d 696, 697 (N.J. Super. Ct. Law Div. 1983) (medical malpractice action involving a "number of difficult legal issues," as well as extensive discovery, pre-trial motions, a six-day trial, and post-trial motions); Buckelew v. Grossbard, 461 A.2d 590 (N.J. Super. Ct. Law Div.)(medical malpractice action which was fully tried, appealed to appellate division and then to Supreme Court, and remanded for new trial, establishing new rule of law), aff'd, 469 A.2d 518 (N.J. Super. Ct. App. Div. 1983).

Dragon has not cited, nor has this court found, any New Jersey case reversing a trial court's finding that an increase above Rule 1:21-7's fee schedule was unwarranted. Cf. Murphy v. Mooresville, 333 A.2d 273, 275 (N.J. Super. Ct. App. Div.) (reversing trial court's denial of fee increase where trial court had concluded that increase warranted but had denied it on basis of mistaken impression that rule precluded it), cert. denied, 343

12

A.2d 444 (N.J. 1975).  On the other hand, in <u>Bolle v. Community Memorial Hosp.</u>, 368 A.2d 935, 937–38 (N.J. Super. Ct. App. Div. 1976), <u>cert. denied</u>, 377 A.2d 679 (N.J. 1977), the Appellate Division reversed a trial court's allowance of a fee above the schedule limits for the prosecution of a medical malpractice action despite the fact that it admittedly required "time, efforts and expertise" and involved not only discovery but a five-day trial and an appeal.  <u>See</u> <u>also</u> <u>Wurtzel</u>, 493 A.2d at 613–16 (reversing trial court's allowance of increased fee for prosecution of medical malpractice action involving extensive discovery and trial preparation, including consultation and preparation of multiple expert witnesses).

Dragon cites the opinion in <u>Iskander v. Columbia Cement Co.</u>, 484 A.2d 353 (N.J. Super. Ct. App. Div. 1984), as precedent for the argument that the magistrate judge and the district judge should have considered the New Jersey rule's failure to keep pace with inflation and the reduced value of the dollar.  While <u>Iskander</u> cited inflation as one of several factors supporting a fee increase, the court explicitly cautioned against extending that holding beyond circumstances in which "an especially long period of time has elapsed between retainer and outcome, such as the eight years involved here."  <u>Id.</u> at 355.  Here, in contrast, the time between retainer by counsel and settlement was four years.  As the court stated in <u>Iskander</u>, the rule's failure to keep pace with inflation "can be solved only by the [New Jersey] Supreme Court in its rule-making capacity." <u>Id.</u>

13

Thus, in the absence of other factors indicating that an increased fee is warranted, we cannot hold that the district court exceeded the considerable bounds of its discretion.

C.

Throughout its brief, Dragon has called to our attention the Mitzels' agreement to Dragon's receipt of the larger fee. Indeed, the Mitzels filed the notice of appeal along with Dragon, challenging the district court's fee award, even though a reversal would mean that the Mitzels' recovery would be substantially reduced. As the magistrate judge noted, if Dragon were awarded the fee it requested, it would receive $648,403.28, instead of the $435,181.47 awarded by the district court.

In this posture of the case, we are acutely uncomfortable with the lack of an opposing party on the appeal. Undoubtedly, the defendants have no interest in how the settlement fund is divided between plaintiffs and their attorneys. The only ones who stand to lose if Dragon gets the increased fee it is seeking are the Mitzels themselves, and the difference to them is $213,221.81, a considerable sum in any financial circumstances. Any time the attorney's fee and the client's recovery come from a fixed fund of money, a "significant conflict of interest" arises between attorney and client. See Report of the Third Circuit Task Force, Court Awarded Attorney's Fees at 36 (Oct. 8, 1985), reprinted in 108 F.R.D. 237 (1985); see also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 820 (3d Cir.) (discussing similar conflict in class action context), cert. denied, 116 S.

14

Ct. 88 (1995). But in this case, by actually petitioning the court for an increase in its fee, Dragon has brought that conflict into stark relief.

The premise behind Rule 1:21-7 is that attorneys and their clients do not have equal bargaining power, and that clients consequently need protection from the courts with respect to contingent fee agreements. See Kingman v. Finnerty, 486 A.2d 342, 344 (N.J. Super. Ct. App. Div. 1985); American Trial Lawyers Ass'n v. New Jersey Supreme Court, 316 A.2d 19, 24-25 (N.J. Super. Ct. App. Div. 1974), aff'd 330 A.2d 350 (N.J. Sup. Ct. 1974). Numerous provisions of the Rule are included to protect clients' interests. Illustrative are those requiring the attorney to advise the client of the option to retain the attorney under an arrangement for compensation on the basis of the reasonable value of the services, 1:21-7(b), and mandating that any application for an increase be made on "written notice to the client," 1:21-7(f).

We have no reason to assume that there has been any overreaching by Dragon or that the Mitzels have not been fully advised of their rights. We assume that the Mitzels joined in bringing this appeal out of a sense of gratitude to Dragon and a commitment to their earlier contractual fee arrangement. Nonetheless, it is because there is an inherent conflict of interest in this situation, but see New Jersey Rules of Professional Conduct (RPC) 1.8(j)(2) (contingency fee contracts excepted from general prohibition on conflicts of interest

15

between lawyer and client), that we have treated this appeal as if filed by Dragon alone.[3]

### III.

For the reasons set forth above, we will affirm the order of the district court.

---

[3]We have no desire to enter into the debate about contingency fees currently underway in legal circles and particularly in New Jersey, where regulation of contingency fees is apparently the strictest in the country.  It has been reported that a New Jersey state senate committee has discussed proposals for abolition of contingency fees, whereas the 1994 report of the New Jersey Supreme Court Committee on Civil Practice, since tabled, recommended amending Rule 1:21-7 to increase the contingency fees allowed.  See generally Robert J. Kerekes, The Crisis of Congested Courts, 18 Seton Hall Legis. J. 489, 498 n.39 (1994); Martin L. Haines, Contingent Fee System in Need of Shakeup, N.J. L.J., Oct. 17, 1994, at 18; Martin L. Haines, Time to Rethink Contingent Fee Caps, N.J. L.J., Sept. 19, 1994, at 17; Tess Brennan, Proposed Contingency-Fee Revision Tabled, N.J. L.J., Apr. 11, 1994, at 8.